In re ESTATE of B. B. DRINKARD, Deceased.

Frances Kathleen DRINKARD, Claimant-Appellee,

v.

Virginia Rose JENNINGS, Intervening Party-Respondent-Appellant.

Court of Appeals of Tennessee, Middle Section.

Aug. 25, 1978.

Certiorari Denied by Supreme Court Nov. 20, 1978.

Dempsey Marks, Marks, Fleming & Marks, Clarksville, for claimant-appellee.

Frank J. Runyon, Clarksville, for respondent-appellant.

## OPINION

SHRIVER, Presiding Judge.

### The Case

Claimant-appellee, Frances Kathleen Drinkard, dissented from the will of her husband, B. B. Drinkard, deceased, and filed a claim against his estate for $25,000.00, evidenced by a check written to her by her deceased husband, and alleging that the amount was owed to her as a debt or, in the alternative, the amount was an inter vivos gift. Virginia Rose Jennings, respondent, only child of the deceased, filed an exception to the claim as an intervening party. The Trial Court found for the claimant and the respondent appealed.

The sequence of events material to this suit are as follows:

On December 22, 1975, the decedent signed a check payable to claimant for $25,000.00, advising her to let him know before she attempted to cash the check. There was not sufficient funds in decedent's checking account to cover the check when it was signed. However, the record shows that he had an estate valued at $150,000.00 to $200,000.00.

Decedent died on January 10, 1976.

On January 13, 1976, claimant made inquiries concerning the check and she was advised there were not sufficient funds to cover the check.

Decedent's will was admitted to probate on January 20, 1976.

On April 21, 1976, claimant-wife dissented from the will.

On April 23, 1976, claimant-wife filed a claim for $25,000.00 against her husband's estate based on the above described check.

On May 13, 1976, respondent, as an intervening party, excepted to the claim.

In an order filed November 15, 1977, the Trial Court found that the $25,000.00 claim was a just and valid claim on the theories of (1) indebtedness by contract, and (2) indebtedness by reason of gift.

### The Proceedings Below

The Will of B. B. Drinkard, deceased, was admitted to probate by order entered in the County Court of Montgomery County, Tennessee on January 20, 1976, and the petitioner, Northern Bank of Tennessee, was issued letters testamentary.

Thereafter, as hereinabove set forth, the claim of Frances Kathleen Drinkard, widow of B. B. Drinkard, was filed, which claim is in words and figures as follows:

"CLAIM OF FRANCES KATHLEEN DRINKARD AGAINST THE ESTATE OF B. B. DRINKARD, DECEASED

"Petitioner, FRANCES KATHLEEN DRINKARD, says that the estate of B. B. Drinkard, deceased, has an indebtedness to her in the amount of $25,000.00 as a result of the following:

The real estate which was acquired by her deceased husband, B. B. Drinkard, in his and their joint names was acquired by her own funds. In order to partially reimburse claimant for the use of her funds in acquiring said real estate in decedent's name, decedent, B. B. Drinkard, executed a check payable to claimant's order in the amount of $25,000.00 dated December 22, 1975, signed by the decedent and drawn on the Northern Bank of Tennessee. At the time of issuing and signing this check and delivering same to claimant, the said B. B. Drinkard did not have sufficient funds in his bank account at the Northern Bank of Tennessee to pay it. Decedent was supposed to have made arrangements to have this check paid, but he never did so prior to his death.

/s/ Frances Kathleen Drinkard
[Acknowledgment]"

This was followed by a petition for an assignment of homestead, dower and a year's support on behalf of Frances Kathleen Drinkard, widow of the decedent.

Exception to the claim was filed by Virginia Rose Jennings, only child of B. B. Drinkard, deceased, wherein it is stated:

"Virginia Rose Jennings would show that the estate of her late father is not indebted to claimant in any amount other than the amount she is entitled to under the law as a result of her being the widow of her father."

On August 22, 1978, the claimant filed a motion for leave to amend the claim, said motion being as follows:

"MOTION FOR LEAVE TO
AMEND CLAIM

Comes now the Petitioner and moves the Court for an order permitting her to amend her claim filed April 23, 1976 by adding a third paragraph thereto, which will read as follows:

'In the alternative, Petitioner would show that by signing and delivering said check to Petitioner, the said B. B. Drinkard made a valid inter vivos gift of $25,000.00, which gift his estate, holding said $25,000.00 on a constructive trust, should now be compelled, as a matter of equity, to complete.'

/s/ Dempsey M. Marks
Attorney for Petitioner"

The foregoing motion was granted by the Court by order of August 24, 1977.

Proof was taken in the form of a discovery deposition of the claimant and the deposition was ordered filed, it being

agreed between the parties that said deposition would be used in the trial of the cause.

Mr. Frank Wenzler, Vice-President of the Northern Bank of Tennessee was called as a witness to testify at the trial on behalf of the claimant. He identified decedent's signature on the check.

Following the filing of briefs by the respective counsel for the parties and upon motion for a finding of facts, the Honorable Trial Judge, William O. Beach, filed his Findings of Fact which may be summarized as follows:

### Findings of Fact

In discussing the claim as an indebtedness by contract the Court found that the $25,-000.00 check dated December 22, 1975 on which the claim is based bears the genuine signature of decedent, B. B. Drinkard, as shown by the testimony of Mrs. Drinkard and Mr. Frank Wenzler, Vice-President of the Northern Bank, on which the check was drawn; that at the time of Mr. Drinkard's death, the claimant, Mrs. Drinkard, was the holder of the instrument in question and presently owns said instrument; that there is evidence to support a finding that the check in question was given to Mrs. Drinkard in satisfaction of what she and her husband saw as her contribution to the marriage and an unwritten partnership respecting the marital properties.

As to the indebtedness by reason of a gift, the Court recites certain facts which constitute proof of the existence of the requisite elements of donative intent and delivery necessary to form a gift inter vivos. The Court further found from the Federal Estate Tax return exhibited to the Court that the decedent was possessed of assets sufficient to place funds in the account before the check was presented so that the check could be paid.

The Final Decree recites, in pertinent part, as follows:

"After consideration of the evidence and the Briefs submitted by counsel for both parties, the Court is of the opinion that the claim of FRANCES KATH-LEEN DRINKARD for Twenty-five Thousand Dollars ($25,000.00) against the Estate of B. B. DRINKARD is a just and valid claim on both theories of FRANCES KATHLEEN DRINKARD, that is the theory of an indebtedness owed her by the estate and a theory of a gift to her by her deceased husband.

It is, therefore, ORDERED, AD-JUDGED and DECREED that the claim of FRANCES KATHLEEN DRINKARD against the Estate of B. B. DRINKARD in the amount of Twenty-five Thousand Dollars ($25,000.00) is allowed, and the Executor of the Estate of B. B. DRIN-KARD is directed to pay the same.

To all of the above VIRGINIA ROSE JENNINGS excepts and is allowed thirty (30) days within which to perfect her appeal.

Signed this 15th day of November, 1977.

/s/ William O. Beach
County Judge"

### Assignments of Error

There are three assignments of error, as follows:

"1. The Court erred in allowing appellee to amend her claim so as to add an alternative basis to her $25,000.00 claim, that being that the check in question was a gift from decedent to appellee, the amendment being filed some nineteen (19) months after the will was admitted to probate.

2. The Court erred in finding that the $25,000.00 claim was a just and valid claim of appellee on the theory that it was a debt owed her by her husband.

3. The Court erred in finding that the $25,000.00 claim was a just and valid claim of appellee on the theory that it was a gift to appellee by her deceased husband."

### Our Conclusions

This case comes to us for a hearing de novo under the statute, T.C.A. § 27–303, and cases construing said statute, with a presumption of correctness of the Trial

Court's findings unless the evidence preponderates against said findings.

A careful examination of the evidence introduced in this cause leads us to conclude that the findings of fact of the Trial Judge are supported by a preponderance of the evidence; however, we must disagree with the conclusion of the Trial Judge in his decree to the effect that the claim of Frances Kathleen Drinkard for $25,000.00 against the estate of B. B. Drinkard can be sustained on both theories, that is (1) the theory of an indebtedness owed her by the estate; and (2) the theory of a gift to her by her deceased husband.

This is true for the reason that in our view of the case these two theories are repugnant and cannot stand together as the basis of her claim.

Furthermore, as to the claim based upon the theory of a gift inter vivos, the authorities generally are in accord with the statement contained in 38 Am.Jur.2d, § 65, p. 869, Gifts, where it is said:

"The general rule supported now by nearly all the cases on the subject is that the donor's check, prior to acceptance or payment by the bank, is not the subject of a valid gift either inter vivos or causa mortis. This is in accordance with the rules established by both the Uniform Negotiable Instruments Law and the Uniform Commercial Code that a check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it. The difficulty with respect to a gift of the donor's check, if the check does not operate as an assignment, is that the mere delivery of the check to the donee or to some other person for him does not place the gift beyond the donor's power of revocation, prior to payment or acceptance."

The foregoing is in accord with the provisions of the Uniform Commercial Code, Sections 47-3-101, et seq., T.C.A. (47-3-409).

Section 47-3-104, T.C.A. provides that the form of negotiable instruments may be a draft, or a check, or a certificate of deposit, and defines a check as a negotiable instrument under the statute.

Section 47-3-408, in dealing with "consideration," provides that want or failure of consideration is a defense against any person not having the rights of a holder in due course, "except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind."

On the other hand, we think the record herein supports the findings of the Trial Judge to the effect that the check in question was given to Mrs. Drinkard in satisfaction of what she and her husband saw as her contribution to the marriage and an obligation that the husband acknowledged at the time he delivered the check to his wife, the claimant herein.

For example, Mrs. Drinkard, in her deposition, testified in answer to the question: "Did you have any business ventures with your husband?" that in addition to her farm in Southern Illinois of about 300 acres and $13,000.00 in money which she turned over to her husband after their marriage when she was a girl just sixteen years old, she also owned a valuable home in Golconda, Illinois which she said would probably be worth between $50,000.00 and $60,000.00 today and which was lost to her and her husband by his handling of their affairs.

She testified that one child was born to their union which child died previously; that she had suffered from asthma and bronchitis for several years prior to Mr. Drinkard's death, and that from time to time she went to Mesa, Arizona for her health and that Mr. Drinkard had discussed with her the desirability of buying a home for her in Arizona and this was part of the discussion that lead up to the issuance of the $25,000.00 check. Incidentally, she was 67 years of age at the time, while Mr. Drinkard was 76 at the time of his death on January 10, 1976.

In discussing her conversation with the decedent at the time of the issuance of the check, which was brought out by examina-

tion of counsel for the respondent and not objected to in any way, she stated that she had asked him to quit smoking cigarettes and the conversation occurred just before Christmas. She testified:

"He sat there a few minutes and he said, well, I've got to go up to my trailer court. I said, well, I wish you wouldn't refer to the trailer court as 'my' trailer court. I said, it hurts my feelings for you to refer to anything we have. I said, after all, all of the money that I've put into our marriage and all the work and everything that I have, I think I have a right to at least you saying '*our*' to anything. He sat there a few minutes and he had tried—has tried ever since I've been in Arizona, to buy a home, all the way from $17,000.00 to $30,000.00. We've looked at about six . . . . And, he has insisted on buying a home out there for me. . . I told him that when he was ready to come to Arizona, that I was ready for the home. He looked at me and . . . I knew that he had the trailer court in his name. I did not know that he had our home—I thought our home was in both of our names. I knew he had the trailer court in his own name, alone. And he said, 'would you like to have $25,000.00?' And, I—the first thing I thought of was a home in Arizona. I thought he was making it possible for me to have it, or a Christmas present. I didn't know what he had in mind. . . . I said, yes, I would. And so, he said write the check out. I wrote the check, myself, and he signed it. And I put the check in my papers. Christmas was coming up, and I didn't know that there would be any special hurry—I never thought about him dying. . . . Then soon after Christmas, he got sick and I was more concerned with him. . . . Dr. Griffin told me that his condition was serious. And, I was more concerned in doing all that I could for him in the last days of his life, and I certainly did. I was more interested in that than I was in getting the check cashed."

On the whole, we are satisfied that there was not only sufficient consideration for the $25,000.00 check but that the record supports the conclusion that Mr. Drinkard felt an obligation to his wife in view of all of the facts and circumstances, and that this check represented at least a partial discharge of that obligation.

It results that the assignments of error with respect to the inter vivos gift are sustained but the assignments with respect to the judgment based upon a discharge of the decedent's obligation to his wife are overruled and the judgment of the Trial Court upholding the claim against the estate of B. B. Drinkard, deceased, is affirmed.

JUDGMENT FOR CLAIM AFFIRMED.

TODD and DROWOTA, JJ., concur.