**In re MORAN AIR CARGO, INC., Debtor.**

**Thomas H. QUINN, Jr., Trustee, Plaintiff,**

**v.**

**TTI DISTRIBUTION CORP., Defendant.**

**Bankruptcy No. 80–00438.**

**Adv. No. 81–0032.**

United States Bankruptcy Court, D. Rhode Island.

June 17, 1983.

Thomas H. Quinn, Jr., Providence, R.I., Trustee.

John F. Sherlock, Jr., Providence, R.I., for defendant.

### DECISION ON TRUSTEE'S COMPLAINT TO AVOID PREFERENCE

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the Trustee's complaint requesting judgment against TTI Distribution

Corp. (TTI) for funds allegedly transferred to it by Moran Air Cargo, Inc. (Moran). The Trustee asserts that the transfers in question should be avoided on the ground that they are preferences within the meaning of 11 U.S.C. § 547(b).[1]

## FACTS

The debtor filed its Chapter 7 petition on June 19, 1980. A hearing was held on the instant complaint on December 10, 1982, where the following relevant facts were presented:[2] Moran is a corporation which provided for the shipment and delivery of cargo through various carriers. TTI is one such carrier. In the ordinary course of its business Moran would receive carrier invoices and file them by individual carrier until paid monthly, by check.

On March 28, 1980, Moran issued check # 26163 in the amount of $7432.86, and on April 17, 1980 it issued check # 26352 in the amount of $5,698.44, both payable to TTI. (Plaintiff's Exhibits A and B respectively.) Each check contains the dates and numbers of the invoices paid by that check. The trustee asserts that payment by these two checks, at least in part, constitutes preferences.

In March 1980, Moran initiated a C.O.D. shipment from Howe & Bainbridge, Inc., of Kenyon, Rhode Island, to American Durable in California. Moran employed TTI as the delivering agent for this shipment and TTI in turn hired Griley Freightlines to make final delivery in California. According to Griley's freight bill $4,638.26 was collected from the consignee, American Durable, on March 26, 1980. (Plaintiff's Exhibit G.) Griley then remitted $3447.50 (the value of the goods) to TTI, which sum was supposed to be turned over to Moran. Moran never received these funds. It is the trustee's position that the $3447.50 held by TTI is a

preference to the extent that it was applied to invoices dated more than 45 days before the $3447 was deposited to the TTI account. See 11 U.S.C. § 547(c)(2).

The applicable statute on preferences is 11 U.S.C. § 547(b), which provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The trustee may not avoid such a transfer if it was "in payment of a debt incurred in the ordinary course of business ... of the debtor and the transferee," and "made not later than 45 days after such debt was incurred." 11 U.S.C. § 547(c)(2).

---

1. This decision, which cites to provisions of the Bankruptcy Reform Act of 1978, is entered under the authority established by the rule adopted by the United States District Court for the District of Rhode Island pursuant to an order of the Circuit Council for the First Circuit, effective December 25, 1982. We follow the lead of the Circuit Council in declining to

"pre-commit ourselves on any legal or constitutional questions which may arise concerning this rule." Order of the Circuit Council for the First Circuit (December 22, 1982).

2. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

## CHECK NO. 26163

Moran issued check # 26163 to the creditor, TTI, on March 28, 1980. We agree with the holding in *G.E. Grogan v. Chesebrough-Ponds, Inc. (In re Advance Glove Mfg. Co.)*, 9 B.C.D. 1395, 25 B.R. 521 (Bkrtcy.E.D.Mich.1982) that for purposes of § 547(b), a transfer by check is not complete until the check is honored by the drawee bank. Although the parties were directed to address this issue in memoranda, neither side discusses the date on which the drawee bank honored check no. 26163. From our own examination of the check, it appears that the endorsement stamp of the drawee bank, Rhode Island Hospital Trust National Bank, bears the date April 7, 1980, and we find that to be the date of the transfer by Moran. April 7, 1980 is within 90 days of the filing date of June 19, 1980. This check, in the total amount of $7,432.86, was in payment of several invoices representing antecedent debts existing from February 5, 1980 to March 3, 1980. The payment in question was made while Moran was insolvent. The testimony of TTI's president, Ronald Barbercheck, that he had a history of collection problems with Moran supports the presumption that the debtor was insolvent 90 days before filing, and that presumption has not been rebutted. 11 U.S.C. § 547(f).

The final element necessary for a finding that this transfer was a preference is that the creditor must have received more than it would receive if paid through the Chapter 7 distribution. The trustee argues that since no proof of claim by TTI appears in the claims register, this creditor would receive nothing in the Chapter 7 case. In opposition to that contention, Ronald Barbercheck testified that he signed a proof of claim and instructed an employee to mail the original and to keep a copy on file. Barbercheck produced his copy of said proof of claim at the hearing. (Defendant's Exhibit 1.) I see no reason to doubt its authenticity. Upon examination of the exhibit and based upon the testimony bearing on this issue, I find that a proof of claim was mailed by TTI and received by the Court. It is not clear why said claim is not on file in the Clerk's office, but I find that not to be the fault of TTI. Accordingly, this decision is based upon the assumption that TTI did file a proof of claim which conforms to Defendant's Exhibit 1.

The trustee, by affidavit, has represented that general creditors may expect approximately a 29% dividend when distribution occurs in this case. TTI received 100% of its claim paid with Moran check # 26163, clearly more than it would receive as a general creditor under this title.

Based on the above findings, the Court concludes that the transfer of check # 26163 was a preference. The trustee, however, may avoid the transfer only to the extent that it was not in payment of debts incurred in the ordinary course of business within 45 days of the transfer, 11 U.S.C. § 547(c). Sixteen of the invoices paid on April 7, 1980 were dated more than 45 days prior to the transfer.[3] The trustee may avoid the transfer in payment of these invoices, which total $4620.74.

## CHECK NO. 26352

Moran issued this check to TTI in the amount of $5698.44 on April 17, 1980. The drawee bank's endorsement stamp on the back of the check is dated April 25, 1980, within 90 days of the filing date. (Plaintiff's Exhibit B.) Said check was in payment of attached invoices representing antecedent debts. For the same reasons given above with respect to check number 26163, I find that check number 26352 also constitutes a preference.

The only invoice paid by this check which was dated more than 45 days prior to the transfer is for $457.30 (incurred on January 11, 1980). The trustee may recover that amount pursuant to § 547(b).

---

**3.** A debt is incurred when the debtor becomes obligated to pay it, not when the creditor chooses to invoice the debtor for the goods. *Sandoz v. Fred Wilson Drilling Co. (In re Emer-* *ald Oil Co.)*, 695 F.2d 833 (5th Cir.1983). Absent any contradictory evidence, we assume that the dates on the TTI invoices are the dates on which Moran incurred the debts.

## THE C.O.D. SHIPMENT

 It is undisputed that the check from Griley Freightlines to TTI, and which was intended for Moran pursuant to Moran air-bill number 126885 (Plaintiff's Exhibit E), was never received by Moran. Ronald Barbercheck testified that Moran's employee in charge of operations instructed Barbercheck to keep the $3447.50 and apply it to overdue invoices. That amount is presently in TTI's general account.

Since 11 U.S.C. § 101(40) defines a transfer to include an involuntary disposal of property, the deposit by TTI of funds due Moran into TTI's own account constitutes a transfer by the debtor within the meaning of § 547(b). Griley's check has the drawee bank's endorsement of June 18. (Plaintiff's Exhibit D.) This transfer date is within 90 days of the filing of the Chapter 7 petition.

The $3447.50 was retained by TTI on account of antecedent debts due and owing to it by Moran. The evidence establishes that over $9000 in open invoices remained unpaid to TTI when it stopped doing business with Moran in May 1980. (Plaintiff's Exhibit C.) Barbercheck testified that he applied the $3447.50 to payment of the overdue debts, because of a history of collection problems with Moran. Based on the evidence, the presumption that Moran was insolvent 90 days prior to its filing is inescapable.

Finally, it must be shown that TTI received more from the transfer of the $3447.50 than it would have received as a 29% creditor in this Chapter 7 distribution. The transfer of $3447.50 was completed in June 1980 when the check was honored by the bank and the funds deposited in TTI's account. At that time Moran owed $9199.12 to TTI. Therefore, TTI received 37.47% of its claim, which is greater than it would receive in the Chapter 7 distribution. The requirements of 11 U.S.C. § 547(b)(5) have been met and the trustee may recover the $3447.50. Since over $6,000 of the existing debt was incurred more than 45 days before the June 18 transfer, the limitation on avoidance established by § 547(c)(2) is inapplicable.

Of course, TTI is entitled to a pro rata share of its claim as a general creditor; however, the full amount of any preferences must be turned over to the trustee, who will disburse appropriate dividends to all creditors, including TTI, at the close of the case. *See 4 Collier On Bankruptcy* ¶ 547.54 (15th ed. 1982).

For the reasons stated above, the trustee's complaint to avoid transfers is granted as indicated above, and he is entitled to recover from TTI the sum of $8525.54.

Enter order accordingly.