In re HOLDER & NORTHERN LUMBER COMPANY, INC. and Holder & Northern Lumber Sales, Inc., Debtors,

John C. McLEMORE, Trustee, Plaintiff,

v.

ASH McNEIL WELDING CO., et al., Defendants.

Bankruptcy Nos. 380–02701, 380–02702. Adv. No. 382–0577.

United States Bankruptcy Court, M.D. Tennessee.

Sept. 5, 1983.

William Robert Pope, Jr., Martin & Cochran, Nashville, Tenn., for plaintiff.

M. Edward Owens, Jr., Chambers, Johnson, Wyckoff & Beckner, Nashville, Tenn., for Lumberman's Mutual Insurance Company.

Henry Haile, Nashville, Tenn., for Management Assistance Co.

## MEMORANDUM [1]

KEITH M. LUNDIN, Bankruptcy Judge.

The issue presented is when is a debt "incurred" for the purpose of determining the availability of 11 U.S.C.A. § 547(c)(2) (West 1979) [2] as a defense in a preference action. For the reasons stated herein, the court holds that a debt is incurred for § 547(c)(2) purposes when the debtor becomes liable for the goods, services, or other performance rendered, and not on such subsequent date as the creditor may submit a bill or invoice to the debtor.

---

1. This adversary proceeding was decided and findings of fact and conclusions of law entered by the court from the bench after the close of proof on August 18, 1983. The issue discussed in this memorandum arose during the course of trial and this memorandum is filed to support the decision delivered from the bench.

2. 11 U.S.C.A. § 547(c)(2) (West 1979) provides:
(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—
(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made not later than 45 days after such debt was incurred;
(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(D) made according to ordinary business terms.

The debtor contracted with Management Assistance Corporation ("MAC") prior to the filing of bankruptcy. The contract was never reduced to writing, but the oral understanding proven at trial was that MAC would provide management services and would be compensated at an hourly rate agreed upon by the parties. MAC agreed to bill the debtor monthly and the debtor agreed to pay during the month in which the invoice was received. Three invoices and three corresponding payments are at issue in this case:

| Transaction | Billed | Received | Check Issued |
|---|---|---|---|
| 1 | 5/2/80 | No proof presented | 7/14/80 |
| 2 | 6/3/80 | 6/4/80 | 8/1/80 |
| 3 | 7/1/80 | 7/7/80 | 8/15/80 Cleared bank on 8/15/80 or 8/16/80 |

For each of the above billings, the work subject to the invoice was performed during the immediately preceding month. The statement dated May 2, 1980 indicates that the services were performed during April of 1980. Similarly, the statement dated June 3, 1980 indicates the services were performed during May of 1980, and the statement tendered on July 1, 1980 indicates the services were performed during June of 1980.

MAC argues in support of its § 547(c)(2) defense that the debts were incurred when the statements were received by the debtor.[3] If MAC is correct, in Transaction No. 3, the debt was "incurred" on July 7, 1980, and the payment on August 15 or 16, 1980 would be within the 45-day period. The § 547(c)(2) defense would, therefore, be available.[4] The trustee argues to the contrary that the debts were "incurred" when the debtor became obligated to pay MAC, i.e., when the management services were actually rendered. The trustee cites in support of this proposition the case of *Sandoz v. Fred Wilson Drilling Co. (In re Emerald Oil Co.)*, 695 F.2d 833 (5th Cir.1983).

In *Emerald Oil,* the United States Court of Appeals for the Fifth Circuit, after an analysis of the relevant legislative history, the available case law, and numerous treatises held that:

> In our view, for purposes of the "ordinary course of business" exception to avoidability created by section 547(c)(2), a debt is incurred when the debtor becomes obligated to pay it, not when the creditor chooses to invoice the debtor for his work or goods. This view is in accord with the most logical meaning of the statutory language in the light of statutory definitions in the Code as a whole, as well as with the apparent general Congressional intent in creating the exception.

695 F.2d at 837. The court noted that its interpretation of when a debt is "incurred" was consistent with 11 U.S.C.A. § 101(11) (West 1979), which defines a debt as a "liability on a claim," and with 11 U.S.C.A. § 101(4) (West 1979) which defines "claim" as including "contingent, unmatured and disputed rights to payment." *Id.* Finally, the court found as an administrative matter that the invoicing date is unnecessarily susceptible to discretionary manipulation. A creditor could predetermine the date an obligation was "incurred" by carefully timing the issuance of a bill. This alternative interpretation would unnecessarily promote

---

**3.** With respect to the transactions numbered 1 and 2 above, the creditor's argument is to no avail. The May 2, 1980 statement was received on a date unknown, but was paid by check dated July 14, 1980. There is no proof in the record to indicate that the statement was received within 45 days of July 14. As to the statement dated June 3, 1980, the proof supports the conclusion that the statement was received on June 4, 1980 and paid by check dated August 1, 1980, well outside the 45-day period. (It does not matter whether the "transfer" for purposes of § 547(c)(2) took place when the check was issued or when the check cleared the bank because the 45-day period had run under either interpretation of the facts.) Thus, MAC's argument is only relevant to the third transaction, where the statement is dated July 1, 1980, was received by the debtor on July 7, 1980 and paid by check dated August 15, 1980.

**4.** All other elements of the § 547(c)(2) defense have been established. The only issue remaining to be addressed in this memorandum is the question whether the transfers occurred within 45 days of the debtor incurring the debt.

the possibility of inequality and reward the creditor who realizes that a debtor is contemplating bankruptcy and secures preferential treatment. *Id.* The overwhelming majority of other courts that have considered the question have adopted the date services are provided as the appropriate onset of the 45-day period for purposes of the § 547(c)(2) defense. *See, e.g., Barash v. Public Finance Corp.,* 658 F.2d 504, 511 (7th Cir.1981); *Ford Motor Credit Co. v. Ken Gardner Ford Sales, Inc.,* 23 B.R. 743, 747 (D.C.E.D.Tenn.1982); *Trauner v. Stephenson Associates, Inc. (In re Valles Mechanical Industries, Inc.),* 20 B.R. 350, 352–353 (Bkrtcy.N.D.Ga.1982); *Kampf v. Postal Finance (In re Keeling),* 11 B.R. 361, 362 (Bkrtcy.D.Minn.1981); *Bass v. Southwestern Bell Telephone Co. (In re Ray W. Dickey & Sons, Inc.),* 11 B.R. 146, 147 (Bkrtcy.N.D.Tex.1980); *Belfance v. BancOhio/National Bank (In re McCormick),* 5 B.R. 726, 731 (Bkrtcy.N.D.Ohio 1980).[5] This court is persuaded that the analysis and conclusion reached by the fifth circuit and these other courts is correct.

Accordingly, the court finds that the debts were "incurred" on the date that the goods, services, or other performance was provided and rejects the use of invoice dates for the purpose of determining the availability of § 547(c)(2) as a defense in a preference action.

An appropriate order will be entered.

5. The courts in both *Valles Mechanical* and *Dickey* explicitly rejected the creditor's contention that the date of invoicing, rather than the date of obligation should be regarded as the date the debt was incurred.