In re The **BLANTON SMITH CORPORATION** and **Grubbs Farms, Inc.,** Debtors.

**Thomas E. RAY, Trustee,**

v.

**GULF OIL PRODUCTS, Defendant.**

**BOYD DISTRIBUTING COMPANY, INC., Third-Party Plaintiff,**

v.

**GULF OIL COMPANY—US, A DIVISION OF GULF OIL CORPORATION, Third-Party Defendant.**

Bankruptcy Nos. 380–01019, 380–01020. Adv. No. 382–0831.

United States Bankruptcy Court, M.D. Tennessee.

Jan. 3, 1984.

M. Edward Owens, Jr., Nashville, Tenn., for Gulf Oil Corp.

Larry Stewart, Nashville, Tenn., for trustee.

Michael R. Jones, Springfield, Tenn., for Boyd Distributing Co., Inc.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This adversary proceeding was initiated by the trustee [1] to recover a series of alleged preferential transfers from the defendants Gulf Oil Products (hereinafter "Gulf") and Boyd Distributing Company, Inc. (hereinafter "Boyd") pursuant to 11 U.S.C. § 547.[2] Boyd filed a third party complaint against Gulf alleging that Gulf was liable to the trustee for return of any preferential transfers because Boyd merely acted as Gulf's agent and all proceeds from these transfers had been transmitted to Gulf. In its answer to this complaint, Gulf counterclaimed for a judgment against Boyd in the event the trustee recovered any preferential transfers from Gulf, asserting that Boyd had violated its fiduciary duty as agent for Gulf.[3] Upon consideration of the evidence presented, exhibits, stipulations, briefs of the parties and the entire record, this court concludes that the trustee should

---

1. Irwin Deutscher, who was trustee when this proceeding was filed, has been replaced as trustee by Thomas E. Ray.

2. Although the complaint only named "Gulf Oil Products" as a party defendant, the attorney for the trustee delivered service of process to Gulf Oil Products c/o Boyd Distributing Co., Inc., Gulf Oil Products c/o CT Corporation System and Gulf Oil Company, U.S., a Division of Gulf Oil Corporation. Both Gulf Oil Corporation and Boyd Distributing Company submitted answers to the trustee's complaint. Since these parties have responded to the trustee's complaint and have interposed no objection to this court's resolving the issues posed in this matter, they both will be considered as defendants in this adversary proceeding.

3. Since the court has determined that both of these parties are defendants in this proceeding, these causes of actions should more properly have been presented as cross-claims pursuant to Federal Rule of Civil Procedure 13(g) as adopted by Federal Rule of Bankruptcy Procedure 7013.

recover from Gulf preferential transfers in the total amount of $21,944.31. The court further finds that Boyd breached its fiduciary duty as agent to Gulf and thus is liable to Gulf for this amount.

The following shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.[4]

The debtors Blanton Smith Corporation and Grubbs Farms, Inc., (hereinafter referred to collectively as "Blanton Smith") filed voluntary Chapter 11 petitions in this court on April 9, 1980. Since that date, the debtors' cases have been treated as if they were consolidated and the same trustee has administered both estates. When the debtors' confirmed plan of reorganization collapsed in the fall of this year, these cases were converted to liquidation cases under Chapter 7.

Both debtors were engaged in the production and wholesale marketing of eggs in the Middle Tennessee area. Prior to the filing of these bankruptcy petitions, Blanton Smith had on a regular basis purchased oil products from Boyd, who acted as Gulf's distribution agent in the Springfield, Tennessee, area. Each delivery of oil products was accompanied by a numbered invoice which set forth the date of delivery, the products delivered and the price to be charged for the products. On the last day of the month, Gulf mailed Blanton Smith a statement itemizing all unpaid outstanding invoices. The due date for each statement was the last day of the following month. Both these statements and the invoices directed that checks for payment on this account should be made payable to Gulf Oil Corporation and sent to Boyd Distributing Company.

In his complaint, the trustee seeks to avoid 35 of these payments totaling $29,813.32 as preferential transfers. All 35 payments were by check. A detailed accounting of these checks, including the date the check was delivered to Boyd and the

date the check was honored by Blanton Smith's bank, is set forth in Exhibit 38 to this proceeding which is attached as an appendix to this Memorandum.

At the hearing of this matter, Henry W. Boyd, the president of Boyd, testified that as Gulf's agent his duties included delivering the products along with the invoices to customers and collecting the bills. Mr. Boyd maintained two bank accounts for his business, these being Boyd's general business account and Gulf's depository account. He was required to deposit all money obtained from the collection of Gulf bills into the Gulf account and prohibited from writing checks on this account. Mr. Boyd also prepared and submitted to Gulf on a regular basis collection reports known as "folios" which set forth the total amount Boyd had received on all Gulf bills.

Mr. Boyd further testified that Blanton Smith frequently gave him post-dated checks which could not be immediately deposited into the Gulf account. Because Boyd only received its commissions from Gulf after Blanton Smith had paid its bill, Mr. Boyd would either use his own funds or money paid to him by other customers to timely pay the Blanton Smith account. Blanton Smith's account therefore appeared current in the folios Boyd submitted to Gulf even though it was consistently in arrears. Boyd sometimes held Blanton Smith's checks for as long as a month. Mr. Boyd admitted he was responsible for insuring that Blanton Smith did not exceed its credit limit with Gulf.

Robert C. Garrett, a credit supervisor for Gulf, testified that Gulf had previously amended Blanton Smith's credit authorization because of several late payments by Blanton Smith. The revised credit agreement provided that no delivery would be made to Blanton Smith if any invoice was not paid within 30 days of receipt. Mr. Garrett confirmed that Gulf's records from Boyd since that time indicated that Blanton Smith was paying its account on time. He

---

4. This adversary proceeding was referred to this court pursuant to Administrative Order No. 28–8 which re-enacted the "emergency interim" rule as interpreted by the Sixth Circuit Court of Appeals in *White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254 (6th Cir.1983).

further stated that Gulf would have terminated Blanton Smith's credit if it had known Blanton Smith's account was delinquent. When Gulf ultimately discovered that Blanton Smith's invoices dated March 3 and March 6, 1980, were not paid on time, Gulf deducted the amount owed on these invoices from commissions due Boyd on other accounts.

The issue whether these transfers are preferences is controlled by 11 U.S.C.A. § 547(b) (West 1979), which provides as follows:

"(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

All of the elements of § 547(b) are satisfied in this case. The parties do not dispute that the transfers occured within 90 days before the filing of the bankruptcy petition, the debtors were insolvent at this time, the checks represented transfers for or on account of an antecedent debt and these transfers enabled the defendants to receive more than they would have if the case were one under Chapter 7 of the Bankruptcy Code.

The disputed question is whether any of these transfers fall within two of the exceptions to § 547(b) listed in § 547(c).[5] The defendants initially rely on § 547(c)(2) as a defense to the trustee's action. 11 U.S.C.A. § 547(c)(2) (West 1979) provides:

"(c) The trustee may not avoid under this section a transfer—

.    .    .    .    .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms . . . ."

The defendants must prove all four enumerated elements of § 547(c)(2) in order to come within the exception. This conclusion is dictated by the plain language of the statute, which utilizes the conjunctive "and" rather than the disjunctive "or."

---

**5.** The defendant Boyd also alleges that any preferential transfer established by the trustee can be "set off" with the defendant's claim against the debtor under 11 U.S.C. § 553. Boyd's argument misconstrues § 553 which permits, subject to court approval, a creditor to "offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C.A. § 553(a) (West 1979). Neither Boyd nor Gulf owed a debt to the debtors prior to the filing of these bankruptcy petitions and therefore no right of setoff exists under § 553. The "debt" which Boyd wishes to offset against its claim is a right the trustee acquired by virtue of his avoidance powers under the Bankruptcy Code, not a debt incurred by the debtor.

*Richter & Phillips Jewelers & Distributors, Inc. v. Dolly Toy Co.*, 31 B.R. 512, 515 (Bkrtcy.S.D.Ohio 1983); *Rovzar v. Biddeford & Saco Bus Garage, Inc. (In re Saco Local Development Corp.)*, 25 B.R. 876, 879 (Bkrtcy.D.Me.1982); *Paskin v. First National Bank (In the Matter of Donny)*, 11 B.R. 451, 452 (Bkrtcy.W.D.Wis.1981); *Belfance v. Bancohio/National Bank (In re McCormick)*, 5 B.R. 726, 730 (Bkrtcy.N.D.Ohio 1980).

■ The defendants have not met this burden. Section 547(c)(2)(B) requires that the transfer to the creditor be made no later than 45 days after the debt was incurred. As Judge Keith M. Lundin of this court recently held, a debt is considered incurred under § 547(c)(2)(B) on the date that the goods, services or other performance is provided. *McLemore v. Ash McNeil Welding Co. (In re Holder & Northern Lumber Co.)*, 37 B.R. 265 (Bkrtcy. M.D.Tenn.1983). *See also Sandoz v. Fred Wilson Drilling Co. (In the Matter of Emerald Oil Co.)*, 695 F.2d 833, 835–837 (5th Cir.1983); *Barash v. Public Finance Corp.*, 658 F.2d 504, 511 (7th Cir.1981); *Richter & Phillips Jewelers & Distributors, Inc. v. Dolly Toy Co.*, 31 B.R. at 515; *Quinn v. TTI Distribution Corp. (In re Moran Air Cargo, Inc.)*, 30 B.R. 406, 408 n. 3 (Bkrtcy.D.R.I.1983). None of the transfers attacked by the trustee as preferential were made within 45 days after these debts were incurred. All of these obliga-

tions were paid by check and, regardless whether the court considers the date of transfer to be when the check was delivered or when the check was honored by the bank, each transfer occurred more than 45 days after the debt was incurred. These transfers are thus not excepted from avoidance by the ordinary course of business exception under § 547(c)(2).[6]

The defendants next urge that these transfers come within § 547(c)(4), commonly referred to as the "subsequent advance rule."[7] As the Sixth Circuit Court of Appeals succinctly explained the operation of § 547(c)(4), "[p]referential transfers as defined in § 547(b) may not be avoided by the trustee if '*after* such transfer, such creditor gave new value'." (emphasis in original). *Waldschmidt v. Ranier (In re Fulghum Construction Corp.)*, 706 F.2d 171, 172 (6th Cir.1983). *See also McClendon v. Cal-Wood Door (In re Wadsworth Building Components, Inc.)*, 711 F.2d 122, 123 (9th Cir.1983); *Flatau v. Marathon Oil Co. (In the Matter of Craig Oil Co.)*, 31 B.R. 402, 407 (Bkrtcy.M.D.Ga.1983).

Because § 547(c)(4) focuses on new value after the preference, the actual date of the preferential transfer from the debtor to the creditor is of critical importance. In the present case, the question is whether the checks transferred by the debtor Blanton Smith to Gulf through its agent Boyd occurred when the checks were actually delivered or when the checks were honored by

---

**6.** Although not raised by the defendants, this court also does not consider these transfers to be contemporaneous exchanges which are excepted from avoidance by § 547(c)(1). 11 U.S.C.A. § 547(c)(1) (West 1979) provides:

"(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange. . . ."

The transfers at issue do not meet either of these criteria. They constituted payments on a credit account and thus were neither intended to be nor were in fact contemporaneous exchanges. *See e.g., Philadelphia Light Supply*

*Co. v. B.R.K. Electronics*, 33 B.R. 734, 738 (Bkrtcy.E.D.Pa.1983).

**7.** 11 U.S.C.A. § 547(c)(4) (West 1979) provides:

"(c) The trustee may not avoid under this section a transfer—

. . . . .

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor. . . ."

Blanton Smith's bank.[8] 11 U.S.C.A. § 547(e) (West 1979), which defines when a transfer occurs for the purposes of the preference section of the Bankruptcy Code, provides in relevant part as follows:

"(e)(1) For the purposes of this section—

(A) . . .

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within ten days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such ten days; or

(C) . . . .

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred."

A literal reading of this provision mandates that a transfer by check does not occur (or is not "perfected") until a creditor on a simple contract cannot acquire a judicial lien superior to the interest of the transferee. The only exception to this rule is if the transfer of the check is "perfected" within ten days after the transfer takes effect between the transferor and the transferee, in which case the date of transfer relates back to the time that the transfer actually took effect between the parties. Under the law of Tennessee, as in most states, a transfer of a check is not "perfected" as defined by § 547(e)(1)(B) until the date that the bank actually honors the check. Tenn.Code Ann. § 47–3–409(1) (1979). *See also Drinkard v. Jennings,* 582 S.W.2d 387, 390 (Tenn.Ct.App.1978).

Despite the specific provisions of § 547(e), most courts have either not addressed or refused to apply the "10 day relation back" exception in considering whether a transfer by check occurred within the 90 day preference period preceding the filing of the bankruptcy petition. These courts have instead adopted the simple rule that a check is deemed transferred when honored by the bank. *See, e.g., Harris v. Harbin Lumber Co. (In the Matter of Ellison),* 31 B.R. 545, 547 (Bkrtcy.M.D.Ga. 1983); *Richter & Phillips Jewelers & Distributors, Inc. v. Dolly Toy Co.,* 31 B.R. at 514; *Quinn v. TTI Distribution Corp. (In re Moran Air Cargo, Inc.),* 30 B.R. at 408; *Artesani v. Travco Plastics Co. (In re Super Market Distributors Corp.),* 25 B.R. 63, 64–65 (Bkrtcy.D.Mass.1982); *Itule v. Luhr Jensen & Sons, Inc. (In re Sportsco, Inc.),* 12 B.R. 34, 35–36 (Bkrtcy.D.Ariz.1981); *In the Matter of Duffy,* 3 B.R. 263, 265 (Bkrtcy.S. D.N.Y.1980).

At least one court has nevertheless recognized that a transfer by check occurs for the purposes of § 547(b)(4) when the transfer takes effect between the parties *if* the check is honored by the bank within ten days of this date. *Eisenberg v. JL International, Ltd. (In re Sider Ventures & Services Corp.),* 33 B.R. 708, 710–712 (Bkrtcy.S.D. N.Y.1983). Because this holding comports with the express language of § 547(e), this court is persuaded that it represents the proper interpretation of when a transfer by check occurs under § 547(b)(4).

This conclusion does not end the inquiry in this proceeding, however, since several courts have adopted a third approach in determining when a transfer by check occurs under § 547(c)(4). *See Gold Coast Seed Co. v. Spokane Seed Co.,* 30 B.R. 551,

---

**8.** Cases arising under the former Bankruptcy Act reached different interpretations of when a transfer by check occurred for purposes of the preference section. *See generally Nicholson v. First Investment Co.,* 705 F.2d 410, 412–413 (11th Cir.1983) (when check honored); *Shamrock Golf Co. v. Richcraft, Inc.,* 680 F.2d 645, 646 (9th Cir.1982) (when check received); *Klein v. Tabatchnick,* 610 F.2d 1043, 1049 (2d Cir.1979) (when check honored); *Fitzpatrick v. Philco Finance Corp.,* 491 F.2d 1288, 1293 (7th Cir.1974) (when check honored); *Latrobe v. J.H. Cross Co.,* 29 F.2d 210, 211 (E.D.Pa.1928) (when check received).

553 (Bkrtcy. 9th Cir.1983); *In re Hoover,* 32 B.R. 842 Bankr.L.Rep. (CCH) ¶ 63,354 at 83,075 (Bkrtcy.W.D.Okl.1983); *Rovzar v. Prime Leather Finishes Co. (In re Saco Local Development Corp.),* 30 B.R. 859, 862 n. 5 (Bkrtcy.D.Me.1983). *See also Ellis, Preferential Payments by Check: At What Point Is Payment Made?,* 16 U.C.C.L.J. 46 (1983).[9] These courts conclude that the legislative history of § 547 establishes that a check is considered transferred *when delivered* for the purposes of the § 547(c) exception. The cited legislative history includes the following comment made by both Representative Don Edwards and Senator Dennis DeConcini in presenting the final drafts of the Bankruptcy Code to Congress:

> "Contrary to language contained in the House report, payment of a debt by means of a check is equivalent to a cash payment, unless the check is dishonored. Payment is considered to be made when the check is delivered for purposes of sections 547(c)(1) and (2)."

124 Cong.Rec.S. 17,414 (daily ed. October 6, 1978) (statement of Sen. DeConcini); 124 Cong.Rec.H. 11,097 (daily ed. September 28, 1978) (statement of Rep. Edwards).

These courts also rely upon the following statement concerning § 547(c)(1) contained in both the House and Senate Report:

> "The first exception is for a transfer that was intended by all parties to be a contemporaneous exchange for new value, and was in fact substantially contemporaneous. Normally, a check is a credit transaction. However, for the purposes of this paragraph, a transfer involving a check is considered to be 'intended to be contemporaneous,' and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial Code specifies as 30 days, U.C.C. § 3–503(2)(a), that will amount to

a transfer that it is 'in fact substantially contemporaneous'."

H.R.Rep. No. 595, 95th Cong., 1st Sess. 373, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 6329; S.Rep. No. 989, 95th Cong., 1st Sess. 88, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 5874.

■ Notwithstanding these legislative comments regarding § 547(c)(1) and (2), this court is again persuaded that the clear and unambiguous language of § 547(e) controls. Section 547(e)(1) defines the term "transfer" for the purposes of § 547, and this court finds no need to extrapolate a gloss on this unambiguous definition due to the two stated references to § 547(c)(1) and (2) in the legislative history. *See Naudain, Inc. v. Schaad Detective Agency,* 32 B.R. 875, 877–878 (Bkrtcy.E.D.Pa.1983); *G.E. Grogan v. Chesebrough-Ponds, Inc. (In the Matter of Advance Glove Manufacturing Co.),* 25 B.R. 521, 524–529 (Bkrtcy.E.D.Mich. 1982). *See also McClendon v. Cal-Wood Door (In re Wadsworth Building Components, Inc.),* 711 F.2d at 123; *Carmack v. Zell (In re Mindy's, Inc.),* 17 B.R. 177, 178–179 (Bkrtcy.S.D.Ohio 1982). *But see Philadelphia Light Supply Co. v. B.R.K. Electronics,* 33 B.R. at 739. Accordingly, the court finds that, for the purposes of determining the applicability of § 547(c)(4), the provisions of § 547(e)(1) control. A check is thus considered transferred under § 547(c)(4) when the check is honored, unless it is honored within ten days of the date of delivery in which case the check will be considered transferred on the date of delivery.[10]

■ All of the checks which constitute preferential transfers in this case were honored within ten days of the date of delivery and therefore under § 547(e)(2)(A) these preferential transfers occurred on the dates the checks were delivered. Subtracting the value of products delivered from the prefer-

---

9. The continued viability of the Ninth Circuit Bankruptcy Appellate Panel's decision in *Gold Coast Seed* must be questioned in light of the Ninth Circuit's decision in *McClendon v. Cal-Wood Door (In re Wadsworth Building Components, Inc.),* 711 F.2d at 123, reaching a contrary result.

10. The court reserves for future consideration the issue of whether § 547(e)(1) also governs when a transfer occurs under § 547(c)(1) and (2).

ential transfers previously received by the defendants yields a total new value advanced to Blanton Smith of $7,869.51. Since the total sum of the preferential transfers that can be avoided by the trustee equals $29,813.82, the defendants may subtract the new value advanced from this sum to leave a net amount which can be recovered by the trustee of $21,944.31.

The trustee may recover this entire amount from Gulf since it was the ultimate recepient of the preferential transfers made by the debtor. The court rejects Gulf's contention that the trustee cannot recover this sum from Gulf because Boyd initially advanced its own funds to "cover" Blanton Smith's account. To the extent that the trustee avoids a transfer under § 547, the trustee may recover for the benefit of the estate the value of the property transferred from "the entity for whose benefit such transfer was made." 11 U.S.C.A. § 550(a)(1) (West 1979). The checks ultimately delivered by Blanton Smith were made payable to Gulf and were clearly intended to be in payment for products delivered by Gulf to Blanton Smith. Therefore, § 550 permits the trustee to recover the value of these preferential transfers from Gulf, the party that gained the benefit of these transfers.

Lastly, this court concludes that Gulf's counterclaim for a judgment against its agent Boyd for the $21,944.31 recovered by the trustee should be granted. As the agent for Gulf, Boyd had a fiduciary duty under the law of Tennessee to make a full and complete disclosure of all facts concerning the Blanton Smith account. The record is clear that Boyd violated this fiduciary obligation by failing to inform Gulf that the debtor was regularly falling behind in the payment of its bills. Henry W. Boyd, the president of Boyd, admitted that he often paid Blanton Smith's bills from other funds in order to keep its account current. These payments by Boyd, reflected in the reports transmitted by Boyd to Gulf, caused Gulf to have the mistaken impression that Blanton Smith was making timely payments. Boyd knew or should have known that Blanton Smith's failure to keep its account current was a significant factor in Gulf's relationship with Blanton Smith, especially in light of Gulf's prior determination to restrict Blanton Smith's credit authorization due to several late payments and its warning that Blanton Smith's line of credit would be terminated if payments continued to be untimely. Boyd's breach of this fiduciary obligation makes it liable to Gulf for all losses and damages resulting from its failure to act. *See Anderson v. Dudley L. Moore Insurance Co.,* 640 S.W.2d 556, 559 (Tenn.App. 1982); *Marshall v. Sevier County,* 639 S.W.2d 440, 446 (Tenn.App.1982); *Corbitt v. Federal Kemper Insurance Co.,* 594 S.W.2d 728, 737 (Tenn.App.1980); *Gay & Taylor, Inc. v. American Casualty Co.,* 53 Tenn.App. 120, 381 S.W.2d 304, 305–306 (1963).

The court will accordingly enter an order requiring Gulf to turnover to the trustee preferential transfers in the amount of $21,944.31 and granting Gulf a judgment against Boyd for this amount.

IT IS, THEREFORE, SO ORDERED.

APPENDIX I

EXHIBIT 38

|  | Inv. # | Inv. Date | B. Smith Check # | Check Date | Date of Deposit | Account Deposited In | Date Check Honored | Amt. of B. Smith Check and Invoice |
|---|---|---|---|---|---|---|---|---|
| 3. | 5594 | 11/15/79 | 10127 | 1/11/79 * | 1/11/80 | Boyd | 1/14/80 | $ 1,888.40 |
| 4. | 4818 | 11/15/79 | 01719 | 1/11/79 * | 1/11/80 | Boyd | 1/14/80 | 49.60 |
| 5. | 4916 | 11/21/79 | 10126 | 1/14/79 * | 1/14/80 | Boyd | 1/15/80 | 1,583.18 |
| 6. | 5518 | 11/24/79 | 01718 | 1/16/79 * | 1/17/80 | Boyd | 1/18/80 | 523.20 |
| 7. | 4891 | 11/26/79 | 10125 | 1/18/79 * | 1/18/80 | Boyd | 1/21/80 | 1,270.50 |
| 8. | 4979 | 11/27/79 | 10124 | 1/18/79 * | 1/18/80 | Gulf | 1/21/80 | 33.96 |
| 9. | 4963 | 11/27/79 | 10123 | 1/18/79 * | 1/18/80 | Gulf | 1/21/80 | 196.20 |
| 10. | 4999 | 12/3/79 | 01962 | 2/1/80 | 2/1/80 | Boyd | 2/4/80 | 811.80 |
| 11. | 5029 | 12/3/79 | 10689 | 2/4/80 | 2/4/80 | Gulf | 2/7/80 | 671.30 |

| | Inv. # | Inv. Date | B. Smith Check # | Check Date | Date of Deposit | Account Deposited In | Date Check Honored | Amt. of B. Smith Check and Invoice |
|---|---|---|---|---|---|---|---|---|
| 12. | 5086 | 12/6/79 | 10640 | 2/6/80 | 2/7/80 | Boyd | 2/8/80 | $ 1,592.10 |
| 13. | 5068 | 12/7/79 | .01963 | 2/8/80 | 2/8/80 | Gulf | 2/11/80 | 43.14 |
| 14. | 5093 | 12/10/79 | 10641 | 2/8/80 | 2/8/80 | Boyd | 2/11/80 | 405.90 |
| 15. | 5096 | 12/11/79 | 10642 | 2/8/80 | 2/8/80 | Gulf | 2/11/80 | 520.20 |
| 16. | 5101 | 12/12/79 | 01964 | 2/13/80 | 2/14/80 | Boyd | 2/15/80 | 973.35 |
| 17. | 5273 | 12/18/79 | 10643 | 2/13/80 | 2/14/80 | Gulf | 2/19/80 | 38.04 |
| 18. | 5254 | 12/19/79 | 10644 | 2/18/80 | 2/19/80 | Boyd | 2/12/80 ** | 1,614.60 |
| 19. | 5256 | 12/20/79 | 10645 | 2/20/80 | 2/21/80 | Gulf | 2/22/80 | 1,318.95 |
| 20. | 5333 | 12/25/79 | 01965 | 2/25/80 | 2/25/80 | Gulf | 2/27/80 | 586.20 |
| 21. | 5307 | 12/26/79 | 10646 | 2/25/80 | 2/25/80 | Boyd | 2/26/80 | 456.63 |
| 22. | 5314 | 12/28/79 | 01967 | 2/28/80 | 2/28/80 | Boyd | 2/29/80 | 879.30 |
| 23. | 5349 | 12/27/79 | 01966 | 2/28/80 | 2/28/80 | Boyd | 2/29/80 | 102.33 |
| 24. | 5323 | 1/2/80 | 11021 | 3/3/80 | 3/3/80 | Gulf | 3/4/80 | 1,638.60 |
| 25. | 5847 | 1/9/80 | 2136 | 3/5/80 | 3/6/80 | Gulf | 3/7/80 | 1,153.01 |
| 26. | 5878 | 1/10/80 | 11022 | 3/7/80 | 3/10/80 | Gulf | 3/13/80 | 491.81 |
| 27. | 5881 | 1/10/80 | 11023 | 3/11/80 | 3/11/80 | Boyd | 3/13/80 | 1,749.60 |
| 28. | 5923 | 1/14/80 | | 3/13/80 | 3/13/80 | Boyd | 3/14/80 | 43.12 |
| 29. | 5949 | 1/17/80 | 11025 | 3/18/80 | 3/18/80 | Gulf | 3/20/80 | 340.90 |
| 30. | 5955 | 1/17/80 | 11024 | 3/13/80 | 3/13/80 | Boyd | 3/14/80 | 1,170.15 |
| 31. | 5981 | 1/21/80 | 2138 | 3/18/80 | 3/18/80 | Boyd | 3/19/80 | 1,088.85 |
| 32. | 5619 | 1/22/80 | 11026 | 3/24/80 | 3/24/80 | Boyd | 3/25/80 | 1,376.34 |
| 33. | 5641 | 1/24/80 | 11027 | 3/31/80 | 3/31/80 | Boyd | 4/3/80 | 18.57 |
| 34. | 5655 | 1/29/80 | 11028 | 3/31/80 | 3/31/80 | Boyd | 4/1/80 | 2,663.10 |
| 35. | 5719 | 2/1/80 · | 02366 | 4/1/80 | 4/1/80 | Gulf | 4/2/80 | 942.30 |
| 36. | 5735 | 2/1/80 | 02367 | 4/1/80 | 4/1/80 | Gulf | 4/2/80 | 65.92 |
| 37. | 5775 | 2/7/80 | 15533 | 4/7/80 | 4/7/80 | Boyd | 4/10/80 | 1,512.67 |

* Year should be 1980.
** Parties believe bank stamp should have been 2/21/80.