In re FABRIC BUYS OF JERICHO, INC. f/k/a Jules Moskowitz Co., Inc., Debtor.

Sanders GROPPER, Trustee of Fabric Buys of Jericho, Inc., f/k/a Jules Moskowitz Co., Inc., Plaintiff,

v.

MATADOR FABRICS, INC., Defendant.

Bankruptcy No. 81 B 10790.
Adv. No. 81–5476–A.

United States Bankruptcy Court,
S. D. New York.

Sept. 22, 1982.

Bertram Goldstein, New York City, for plaintiff-trustee.

Jerrolde Lloyd May, Jamaica, N.Y., for defendant.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

This adversary proceeding was commenced on July 29, 1981, by the trustee to the debtor, Fabric Buys of Jericho ("Fabric Buys"), to recover $4,364.07 as preferential transfers under Bankruptcy Code sections 547 and 550. After the defendant, Matador Fabrics, Inc., ("Matador") submitted its answer and amended answer, the plaintiff made this motion for summary judgment. Both parties have submitted affidavits on this motion. The motion for summary judgment is granted in part, as to two invoices totalling $1,419.00, and denied in part with a hearing ordered to determine the custom and usage in the textile merchandising industry regarding billing procedures.

*Background*

The facts of this case are as follows. Fabric Buys filed its voluntary petition on April 10, 1981. In 1980, the debtor purchased assorted goods from the defendant, Matador Fabrics, Inc. The payments involved were made for six invoices which were dated October 27, 1980 (invoices 4068, 4074), October 30, 1980 (invoices 4064, 4069 and 4073), and November 4, 1980 (invoice 4072). By a check dated January 8, 1981, in the amount of $2,063.75, debtor paid invoices numbered 4064, 4068 and 4069, reduced by a credit allowance totalling $163.81.

That check was paid by debtor's bank on January 20, 1981. The debtor paid invoice number 4072 by a check in the amount of $881.32 dated January 15, 1981. By a check dated February 10, 1981, in the amount of $1,419.00, debtor paid invoices by numbered 4073 and 4074. That check was paid by debtor's bank on February 17, 1981. The record is clear that the aforementioned payments: were for the benefit of Matador; were made while the debtor was insolvent; were made within 90 days before the date of the filing of the petition; and enabled Matador to receive more than it would receive if the case were a liquidation case under Chapter 7. *See* 11 U.S.C. § 547(b). However, a genuine issue of fact exists as to whether the payments were for an antecedent debt owed by the debtor. The date the debt was incurred is a material fact in question.

*Discussion*

Under Bankruptcy Code section 547(f), the insolvency of the debtor is presumed on and during the 90 days immediately preceding the date of the filing of the petition. The plaintiff has submitted balance sheets prepared by the trustee's accountants which reflect insolvency of the debtor on December 31, 1980, and April 9, 1981. The defendant contends that it had no knowledge of the debtor's insolvency at the time of the payments. Defendant's contention has no relevance in light of the explicit presumption of insolvency provided by the Code.

It is the date of the payment of a check by the drawee's bank that controls the date of the transfer. The date of the payment is crucial in determining when the preferential transfer occurred. *In re Duffy,* 3 B.R. 263 (Bkrtcy.S.D.N.Y.1980). Therefore there is no question that the payments occurred within the 90 days preceding the filing of the petition.

The plaintiff has shown to the satisfaction of this Court that the instant transfers enabled Matador to receive more than it would have received if the case were a case under Chapter 7, the transfer had not

been made, and Matador would have received payment of the debt to the extent provided by title 11. 11 U.S.C. § 547(b)(5). This is evidenced by the dividend of 25% to 35% that the Trustee anticipates will be paid to the general unsecured creditors of the debtor.

In its affidavit in opposition, defendant contends that the payments were not for antecedent debts, since under the custom and usage in the textile merchandising industry payment is not due until the purchaser of the goods has inspected all of the goods delivered. According to the defendant, the provision in the invoice stating "Terms—Net 60" means that the purchaser has 60 days to inspect the goods and payment is not due until the end of the 60 day period.[1] Defendant further contends that as a result of this custom and usage, the debts of the Fabric Buys were not incurred until 60 days after the date of invoice and therefore the exception provided by 11 U.S.C. 547(c)(2) applies in this matter.

Section 547(c)(2) prevents the trustee from avoiding a transfer made within 90 days of the filing to the extent that the transfer was:

> (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
> (B) made not later than 45 days after such debt was incurred;
> (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
> (D) made according to ordinary business terms....

11 U.S.C. § 547(c)(2).

Simply stated, the defendant contends that payment was not due until: December 25, 1980, for invoices numbered 4068 and 4074, (dated October 27, 1980); December 28, 1980, for invoices numbered 4064, 4069 and 4073 (dated October 30, 1980); and January 2, 1981, for invoice numbered 4072 (dated November 4, 1980). Thus, the payments

made in early 1981 were made within 45 days after the debts were incurred and section 547(c)(2) applies.

Regardless of the defendant's custom and usage defense, the February 17, 1981, payment of $1,419.00, for invoices numbered 4073 and 4074, can be avoided by the Trustee as a preferential transfer because the payment date is beyond the 45 day period.

In its reply affidavit, Fabric Buys has offered his own expert opinion as to the custom and usage in the textile merchandising industry. Fabric Buys contends there is no such "strange" custom and usage that provides for a 60 day "holding period" when purchasing goods. Plaintiff contends the term "Net 60" is an extension of credit to the purchaser.

Uniform Commercial Code section 2–507 provides in part: "(1) Tender of delivery is a condition to the buyer's duty to accept the goods and, *unless otherwise agreed,* to his duty to pay for them. Tender entitles the seller to acceptance of the goods and to payment according to contract." (emphasis added)

■ It is hornbook law that if usage contradicts the ordinary meaning of words used, then usage will control. If the parties contract with reference to a trade usage, then the usage may even override the provisions of the Uniform Commercial Code. *See J. White & R. Summers,* Uniform Commercial Code 100 (2d ed. 1980).

■ In determining whether there is any triable issue of fact the trial court should not pass upon the credibility of opposing affidavits *unless* the evidence tendered by them is too incredible to be accepted by reasonable minds. *See* 6 Moore's Federal Practice ¶ 56.11(3) (2d ed. 1976).

■ Defendant has raised a genuine issue of fact. If the custom and usage in the textile trade is as the defendant contends then plaintiff's motion for summary judg-

---

1. On the upper right hand corner of the invoice is printed in bold letters: "postively no claims or refunds after 5 days of receipt of goods. Goods returned without prior written authorization will be refused." Nonetheless defendant contends that custom and usage dictates payment due until 60 days after delivery.

ment should be denied with respect to invoices numbered 4064, 4068, 4069 and 4072. If, however, the custom and usage of the textile trade is as the plaintiff contends, then summary judgment should be granted in favor of the plaintiff.

It is necessary that a hearing be held with the specific purpose of determining the custom and usage in the textile trade and whether the parties contracted with reference to it.

■ Plaintiff further contends that, pursuant to Federal Rule of Civil Procedure ("F.R.Civ.P.") 8(c) and Bankruptcy Rule 708, affirmative defenses must be set forth in the pleadings. The defendant did not plead either custom and usage or the exception under 547(c)(2) as an affirmative defense in its amended answer, thus the defendant may not raise these defenses in the instant motion for summary judgment. While this Court recognizes the relevance of this contention, *see Carroll v. Paramount Pictures, Inc.,* 3 F.R.D. 47 (S.D.N.Y.1943), it is loath to invoke the harsh medicine of summary judgment on a procedural technicality. In *Rossiter v. Vogel,* 134 F.2d 908 (2d Cir. 1943), the Court stated: "[w]here facts appear in affidavits upon a motion for summary judgment which would justify an amendment of the pleadings, such amendment should not be prevented by the entry of a final judgment." *Id* at 912.[2] Federal Rule of Civil Procedure 15(a) states that leave to amend a pleading "shall be freely given when justice so requires." In light of the liberal language pertaining to amendment of pleadings, this Court refuses to grant summary judgment solely on a procedural basis.

In conclusion, for the reasons stated above, summary judgment is granted in favor of the plaintiff with respect to invoices numbered 4073 and 4074 and the defendant is directed to pay the sum of $1,419.00 to the

plaintiff. Summary judgment is denied as to the remaining four invoices and a hearing ordered to determine the custom and usage in the textile merchandising industry.

It is so ordered.

---

2. Our Circuit Court held, in *Freeman v. Marine Midland Bank,* 494 F.2d 1334 (2d Cir. 1974), that although the plaintiff's pleading was defective, the lower court should not have dismissed the complaint on a F.R.Civ.P. rule 12(b)(6) motion, saying "when matters outside the pleadings are considered on a Rule 12(b)(6) motion,

the motion is to be treated as a summary judgment.... The plaintiffs *affidavit opposing the bank's motion to dismiss should have been considered in* testing ... whether a triable issue of fact exists...." *Id.* at 1339 (emphasis added).