In re NAUDAIN, INC., formerly known as Brooks Shoe Manufacturing Company, Inc., et al. Debtors.

NAUDAIN, INC., formerly known as Brooks Shoe Manufacturing Company, Inc., Plaintiff,

v.

SCHAAD DETECTIVE AGENCY, Defendant.

Bankruptcy No. 81–04333G.

Adv. No. 82–3067G.

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 9, 1983.

---

Margery N. Reed, Duane, Morris & Heckscher, Philadelphia, Pa., for debtor/plaintiff, Naudain, Inc., formerly known as Brooks Shoe Manufacturing Co.

L.C. Heim, Dell Alba, Heim & LeCates, York, Pa., for defendant, Schaad Detective Agency.

Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa., for the Creditors' Committee.

## · OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue presented herein is whether certain check payments made by the debtor to the defendant were made "not later than 45 days" after the debts were incurred in order to fall within the exception to the trustee's avoidance powers contained in section 547(c)(2) of the Bankruptcy Code ("the Code"). We conclude that the payments in question are avoidable pursuant to section 547(b) of the Code because the said payments were not made within 45 days from the date on which the debts were incurred as required by section 547(c)(2) of the Code.

The facts of the instant case have been stipulated by the parties and are as follows:[1] On October 23, 1981, Naudain, Inc., formerly known as Brooks Shoe Manufacturing Company, Inc. ("the debtor"), filed a petition for reorganization under chapter 11 of the Code. Immediately prior thereto, the Schaad Detective Agency, Inc. ("Schaad") was a creditor of the debtor as a result of Schaad having contracted to pro-vide security guards for a certain facility of the debtor. On November 18, 1982, the debtor filed a complaint against Schaad to avoid certain transfers made by it to Schaad pursuant to section 547(b) of the Code and to recover said transfers in accordance with section 550 of the Code.[2] The said transfers consist of payments made by the debtor to Schaad in the form of two checks. It is undisputed that the first check was drafted before the ninety (90) day period preceding the debtor's filing of its petition, but was paid by the debtor's bank within the aforementioned ninety days; and, it is agreed that the second payment was issued and honored within the ninety days prior to the filing of the petition by the debtor. The aforesaid alleged preferences total $9,978.00.

Section 547(b) of the Code provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

---

1. This opinion constitutes findings of fact and conclusions of law as required by Rule 7052 of the Rules of Bankruptcy Procedure (effective August 1, 1983).

2. Section 1107(a) of the Code grants the debtor in possession all the rights and powers of a trustee appointed in a case under chapter 11 of the Code. 11 U.S.C. 1107(a).

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

However, Schaad contends that the payments made to it by the debtor fall within the exception to the trustee's avoiding powers contained in section 547(c)(2) of the Code, which provides:

(c) The trustee may not avoid under this section a transfer—

   *     *     *     *     *     *

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;

11 U.S.C. § 547(c)(2).[3]

The sole issue for determination in the case *sub judice* is whether the requirements of subsection (B) of section 547(c)(2) have been satisfied, namely: were the payments by the debtor made to Schaad "not later than 45 days after such debt was incurred" 11 U.S.C. § 547(c)(2)(B). In support of its position that the transfers in question may not be avoided by virtue of section 547(c)(2), Schaad maintains: (1) that the date of transfer, for purposes of section 547(c)(2), is the date that the check was received by Schaad and not the date on which the check was actually paid by the debtor's bank; and (2) that the respective debts in question were "incurred," for purposes of section 547(c)(2)(B), not when the services in question were rendered, but, rather, when the invoices for those services were mailed by Schaad to the debtor.

■ As we have previously held in *In re Ardmore Sales Co., Inc.,* 22 B.R. 911 (Bkrtcy.E.D.Pa.1982), "[i]t is generally held that payment of a debt by check constitutes a transfer under the Code as of the date of payment rather than as of the date of delivery." citing 3 Collier on Bankruptcy, ¶60.14 at 820 (14th ed. 1977); *Matter of Duffy,* 3 B.R. 263 (Bkrtcy.S.D.N.Y.1980). *See also In re Fabrics of Jericho,* 22 B.R. 1010 (Bkrtcy. S.D.N.Y.1982); *In re Sportsco, Inc.,* 12 B.R. 34 (Bkrtcy.D.Ariz.1981).[4]

■ However, Schaad relies exclusively on the legislative history of section 547(c), which expressly states:

Contrary to language contained in the House Report, payment of a debt by means of a check is equivalent to a cash payment, unless the check is dishonored. Payment is considered to be made when the check is[5] delivered for purposes of sections 547(c)(1) and (2).

At first glance, it would appear that the aforesaid legislative comment would support Schaad's contention that, under section 547(c)(2), the dates of transfer are the dates the checks in question were received by Schaad and not the dates on which the respective checks were honored by the debt-

---

**3.** All four elements of § 547(c)(2), (A) through (D), must be satisfied in order to prevent the avoidance of a preferential transfer under § 547(b). *See Matter of Donny,* 11 B.R. 451 (Bkrtcy.W.D.Wis.1981); *In re Gulf States Marine, Inc.,* 6 B.C.D. 79 (Bkrtcy.W.D.La.1980); *In re McCormick,* 5 B.R. 726 (Brktcy.N.E.Ohio 1980).

**4.** *Contra In re Garland, Inc.,* 19 B.R. 920 (Bkrtcy.E.D.Mo.1982).

**5.** This statement was made by both the Honorable Don Edwards, Chairman of the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary, and by the Honorable Dennis DeConcini, Chairman of the Subcommittee on Improvements of Judicial Machinery of the Senate Committee on the Judiciary. The statement by Congressman Edwards was made when he introduced the House Amendment to the Senate Amendment to H.R. 8200. 124 Cong.Rec. H 11,097 (daily ed. Sept. 28, 1978). The statement by Senator DeConcini was made when he introduced the Senate Amendment to the House Amendment to H.R. 8200. 124 Cong.Rec. S 17,414 (daily ed. Oct. 6, 1978).

or's bank. However, we refer to the comprehensive analysis of this issue engaged in by the court in *Matter of Advance Glove Mfg. Co.,* 25 B.R. 521 (Bkrtcy.E.D.Mich., S.D.1982) and we adopt the reasoning and rationale expressed by that court:

Subsections 547(c)(1) and (c)(2) address different issues. Section 547(c)(1) deals with the character of a transfer when it was made. Section 547(c)(2), in contrast, delineates the conditions which have to be met to protect the transfer involving a credit transaction otherwise subject to preferential attack. There is a rational basis for treating a check as a 'cash' transaction for section 547(c)(1) and not for section 547(c)(2).

In the absence of any evidence to the contrary, the conclusion is inescapable that Congress did not intend to equate delivery of a check with payment for purposes of the section 547(c)(2) exception. The 'naked' reference to section 547(c)(2) in the statement relied upon by the defendant [Schaad] does not constitute such evidence. The only statement in the House Report dealing with the question whether a check constitutes payment when it is delivered or when it is cashed appears with reference to section 547(c)(1). The legislative statement relied upon by the defendant was intended to do nothing more than modify the time limit within which a transferee had to present a check for payment to retain his protected status under section 547(c)(1). There is nothing in the legislative history other than the unexplained, enigmatic reference to section 547(c)(2) in that comment to indicate that the phrase, 'payment is considered to be made when the check is delivered,' was intended to apply to section 547(c)(2). If the drafters had intended to make that phrase applicable to section 547(c)(2), it is reasonable to assume that this fundamental change in policy would have been included in the comment that dealt with section 547(c)(2).[6] This they did not do. The reference to section 547(c)(2) in the statements made by Congressman Edwards and Senator DeConcini appears to be clearly inadvertent, gratuitous and unintentional.

25 B.R. at 527.

Therefore, we hold that both of the transfers at issue occurred on the dates the debtor's bank honored the two checks in question. Consequently, since the first check in question was honored by the debtor's bank on July 27, 1981, we conclude that that transfer occurred on said date; and, since the other check at issue was honored by the debtor's bank on August 24, 1981, we likewise hold that the second transfer occurred on that date.

We next address Schaad's contention that it is entitled to retain the two transfers because said transfers were made within forty-five (45) days after the various debts were incurred pursuant to the exception embodied in section 547(c)(2) Schaad argues that, for purposes of section 547(c)(2)(B), the debts in question were "incurred" upon the mailing of the various invoices by Schaad and not at the time the services were rendered to the debtor by Schaad. We disagree.

*Collier on Bankruptcy* provides that:

both the debtor and the transferee, and if the transfer was made according to ordinary business terms, then the transfer is protected. The purpose of this exception is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 373 (1977) *reprinted in* U.S.Code Cong. & Ad.News 1978, pp. 5787, 6329.

6. The comment in its entirety reads as follows: The second exception [547(c)(2)] protects transfers in the ordinary course of business (or of financial affairs, where a business is not involved). For the case of a consumer, the paragraph uses the phrase 'financial affairs' to include such nonbusiness activities as payment of monthly utility bills. If the debt on account of which the transfer was made was incurred in the ordinary course of both the debtor and the transferee, if the transfer was made not later than 45 days after the debt was incurred, if the transfer itself was made in the ordinary course of

The determination of when a debt is actually 'incurred' is critical. One view is that the debt is not incurred until an invoice is sent or demand for payment is made. The probably better view is that the debt is incurred whenever the debtor obtains a property interest in the consideration exchanged giving rise to the debt. Thus if goods are identified for shipment, unless the special agreement otherwise provides, the debtor has a special property interest and the debt is 'incurred'. Certainly when a debtor uses a utility the debt is incurred at the time the resource is consumed rather than when the invoice is sent.

4 Collier on Bankruptcy ¶547.39 at 547–121 (15th ed. 1983).

In addition, the court in *In re Valles Mechanical Industries, Inc.,* 20 B.R. 350 (Bkrtcy.N.D.Ga.1982) stated:

'Incurred' does not necessarily imply 'due'. One noted commentary on the bankruptcy laws [Collier] is of the opinion that a debt is incurred at the time that services are rendered or goods delivered and not at the time a bill is sent ... (quotation omitted).

This Court believes that the opinion expressed by Collier is the proper view as to when a debt is incurred. For example, the mere fact that a bill is never sent does not mean that an obligation has not been created, but it means only that payment is not yet due.

20 B.R. at 352–53. *See also In re Brown,* 20 B.R. 554 (Bkrtcy.S.D.N.Y.1982); *In re Ray W. Dickey & Sons, Inc.,* 11 B.R. 146 (Bkrtcy. N.D.Tex.1980).

A review of the commentaries and decisional interpretations on section 547(c)(2) leads us to conclude that a debt is "incurred" for purposes of 547(c)(2) "on the date the debtor becomes liable for it—when a resource is consumed or a service performed—, not the date that the creditor chooses to bill the debtor." *Matter of Emerald Oil Co.,* 695 F.2d 833 (5th Cir.1983).

In conclusion, we reiterate that the transfers were made on the dates that the two checks were honored by the debtor's bank and that the debts for which those checks were drawn were "incurred" on the dates that the services were performed by Schaad. The parties have stipulated that the first check was issued for services rendered during the month of April, 1981, and for services rendered during the month of May, 1981. At the very latest, then, the debts for which the first check was issued were incurred on May 1, 1981, and June 1, 1981, respectively. Since payment for the aforesaid services was made on July 27, 1981 (the date the debtor's bank honored the first check), it is obvious that payment was not made 45 days after the respective debts were incurred as required by section 547(c)(2). The same result is reached in regards to the second transfer. The parties have agreed that the second check was tendered for services performed during the month of June, 1981. At the very latest, the debt for which the second check was rendered was incurred on July 1, 1981. Since payment for said service was made on August 24, 1981 (the date the debtor's bank honored the second check), it is also apparent that payment was not made 45 days after the debt was incurred as mandated by section 547(c)(2). Consequently, because the parties have stipulated that all the elements of section 547(b) are present in the instant case and because the transfers in question do not fall within the exception to the avoidance powers enumerated in section 547(c)(2), we will grant the debtor's complaint to avoid the subject transfers.

ORDER

AND NOW, to wit, this 9th day of September, 1983, it is

ORDERED that the complaint of the debtor, Naudain, Inc., formerly known as Brooks Shoe Manufacturing Company, Inc., against the Schaad Detective Agency ("Schaad") to avoid the preferential transfers of $9,978.00 by the debtor to Schaad pursuant to section 547(b) of the Bankruptcy Code ("the Code") and to recover said transfers in accordance with section 550 of the Code be, and the same hereby is, GRANTED; and it is further

ORDERED that Schaad shall forthwith pay to the debtor the sum of $9,978.00, pursuant to section 550 of the Code.