**In re STAVECO ELECTRICAL CONSTRUCTION, INC., Debtor.**

**Joseph M. WEINBERG, Trustee for Staveco Electrical Construction, Inc., Plaintiff,**

**v.**

**MERTZ CORPORATION, Daniel I. Fisher, and Fisher Development Corporation, Defendants.**

**Bankruptcy No. 82–01960.
Adv. No. 84–0110.**

United States Bankruptcy Court, New Jersey.

April 16, 1985.

Bryna L. Singer, Joseph E. McCormick, Jr., Joseph Weinberg, Weinberg & McCormick, Haddonfield, N.J., for trustee/plaintiff.

Leon D. Dembo, Collingswood, N.J., for defendants.

## OPINION

EMIL F. GOLDHABER, Chief Judge:[1]

The issue currently before the bench is whether a certain check payment made by the debtor to the defendant was made "not later than 45 days" after the debt was incurred in order to fit within the exception to the trustee's avoidance powers found at 11 U.S.C. § 547(c)(2) of the Bankruptcy Code ("the Code"). It follows that we must first resolve the underlying controversy as to whether, for purposes of § 547(c)(2), the date of transfer is the date that the check was honored by the debtor's bank. Because we find that the date of transfer is the date the debtor's bank paid on the check, which was "later than 45 days" after the debt was incurred, we conclude that the payment in question is avoidable pursuant to § 547(b).

The undisputed facts of this controversy are as follows:[2] Staveco Electrical Construction, Inc., filed a petition for reorganization under chapter 11 of the Code on March 24, 1982. Prior thereto, on September 29, 1981, the debtor had entered into a lease with Fisher Development Co. for 60 months, running from October 1, 1981, until September 30, 1986. The terms of the lease appointed the Mertz Corporation ("Mertz") as the landlord's agent and provided for monthly payments of $2,654.17. For four months rent was timely paid and received. But February's rent went unpaid and no attempt to cure the delinquency occurred until March 12, 1982. On that date, Mertz received the debtor's check for $2,654.17. The aforesaid check was deposited but subsequently returned to Mertz by the debtor's bank due to insufficient funds in the debtor's account. The debtor issued a replacement check for the dishonored one on March 17, 1982, which the debtor's bank paid on March 22, 1982. Fifty days passed from the time the debtor incurred the debt until the time the bank paid on it.

The trustee then filed a complaint against Mertz to recover the March 22, 1982, payment as an avoidable transfer pursuant to § 547(b). Mertz responded with the defense of § 547(c)(2). Thereafter, Mertz moved for summary judgment and the trustee brought his own cross-motion for summary judgment.

As set forth in § 547(b), five elements must be satisfied in order for the trustee to avoid the transfer:

1. Specially designated to hear and dispose of cases in the United States Bankruptcy Court for the District of New Jersey in Camden.

2. Under Fed.R.Civ.P. 56, which is applicable through Bankruptcy Rule 7056, summary judgment can be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The U.S. Court of Appeals for the Third Circuit has characterized summary judgment as "a drastic remedy," and has stated "that courts are to resolve any doubts as to existence of genuine issues of fact against the moving parties." *Hol-*

*linger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981). "Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion." *Goodman v. Meade Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. den.,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Nonetheless, in opposing a motion for summary judgment "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(c).

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(c) such creditor received payment of such debt to the extent provided by the provisions of this title.

Mertz presses the contention that the payment made to it by the debtor falls within the exception to the trustee's avoiding powers found at § 547(c)(2), which provides in pertinent part as follows:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) *made not later than 45 days after such debt was incurred;*

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business term[.] (Emphasis added).

The threshold issue for determination in the case *sub judice* is whether the requirements of § 547(c)(2)(B) have been satisfied, namely, was the payment by the debtor made to Mertz "not later than 45 days after such debt was incurred." In support of its position that the transfer in question may not be avoided by virtue of § 547(c)(2), Mertz maintains that for the purposes of § 547(c)(2)(B) a check is transferred when delivered. Accordingly, it stresses that the March 17, 1982, payment was not outside of the 45 day limit, and would be unavoidable.

However, counsel for the defendant has seemingly overlooked the accepted case law that it is generally held that payment of a debt by check constitutes a transfer under the Code as of the date of payment, rather than as of the date of delivery. *In Re Duffy,* 3 B.R. 263 (Bankr.S.D.N.Y.1980); *In Re Naudain, Inc.,* 32 B.R. 875 (Bankr. E.D.Pa.1983); *In Re Sportsco, Inc.,* 12 B.R. 34 (Bankr.D.Ariz.1981); *In Re Fabric Buys of Jericho, Inc.,* 22 B.R. 1010 (Bankr. S.D.N.Y.1982). As the court stated in *Duffy, supra:*

> A check itself does not vest in the payee any title to or interest in the funds held by the drawee bank. See U.C.C. section 3-409. The check is simply an order to the drawee bank to pay the sum stated and does not constitute a transfer and delivery of the fund until it is paid. The date of payment, and not the date of delivery is crucial in determining when the preferential transfer occurred. 3 B.R. at 265.

Mertz insists, however, that the payment of a debt by check is a simple credit transaction, and for purposes of commercial reality, the transfer of a check as payment for a debt is a contemporaneous exchange for purposes of section 547(c)(1) and (2). We recognize Mertz's position, but cannot concur. Rather, we conclude that a transfer of a check is contemporaneous for the purposes of 547(c)(1), but not for the purposes of section 547(c)(2). *See, In Re Super Market Distributors Corp.,* 25 B.R. 63 (Bankr.D.Mass.1982).

We adopt the reasoning expressed by the court in *In Re Advance Glove Mfg. Co.*, 25 B.R. 521 (Bankr.E.D.Mich.1982), to support our conclusion. That court stated the following:

Subsections 547(c)(1) and (c)(2) address different issues. Section 547(c)(1) deals with the character of a transfer when it was made. Section 547(c)(2), in contrast, delineates the conditions which have to be met to protect the transfer involving a credit transaction otherwise subject to preferential attack. There is a rational basis for treating a check as a "cash" transaction for section 547(c)(1) and not for section 547(c)(2).

In the absence of any evidence to the contrary, the conclusion is inescapable that Congress did not intend to equate delivery of a check with payment for purposes of the section 547(c)(2) exception. The "naked" reference to section 547(c)(2) in the statement relied upon by the defendant does not constitute such evidence. The only statement in the House Report dealing with the question whether a check constitutes payment when it is delivered or when it is cashed appears with reference to section 547(c)(1). The legislative statement relied upon by the defendant was intended to do nothing more than modify the time limit within which a transferee had to present a check for payment to retain his protected status under section 547(c)(1). There is nothing in the legislative history other than the unexplained, enigmatic reference to section 547(c)(2) in that comment to indicate that the phrase, "payment is considered to be made when the check is delivered," was intended to apply to section 547(c)(2). If the drafters had intended to make that phrase applicable to section 547(c)(2), it is reasonable to assume that this fundamental change in policy would have been included in the comment that dealt with section 547(c)(2). This they did not do. The reference to section 547(c)(2) in the statements made by Congressman Edwards and Senator DeConcini appear to be clearly inadvertent, gratuitous and unintentional.

25 B.R. at 527; *Naudain*, 32 B.R. at 878. Therefore, we hold that the transfer at issue occurred on the date the debtor's bank honored the check in question. Since we so conclude, the payment falls outside of the 45-day limit allowed by § 547(c)(2)(B) and hence is avoidable by the trustee as a preference under § 547(b). We will accordingly grant the trustee's motion for summary judgment and avoid the subject transfer.