**In re RAMY SEED COMPANY, Debtor.**

**RAMY SEED COMPANY and Committee of Unsecured Creditors of Ramy Seed, Plaintiffs,**

v.

**HABSTRITT FARMS, INC., Defendant.**

**Bankruptcy No. 3–82–1023.**
**Adv. No. 3–84–0190.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Aug. 16, 1985.

Stephen F. Grinnell, Minneapolis, Minn., for plaintiffs.

T. Chris Stewart, Warroad, Minn., for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

The above-captioned matter came on before the undersigned United States Bankruptcy Judge on April 25, 1985, at St. Paul, Minnesota, upon cross-motions for summary judgment. Plaintiffs appeared by Stephen F. Grinnell, attorney for the Unsecured Creditors Committee. Defendant appeared by its attorney, T. Chris Stewart. Upon the motions and their supporting documents, the arguments of counsel, and all of the other files and records herein, the Court makes the following Findings of Fact, Conclusions of Law, and Order for Judgment.

### FINDINGS OF FACT

1. That Debtor is a Minnesota corporation which did business as a wholesaler, distributor and broker of agricultural seed products at Mankato, Minnesota. Debtor filed its Petition under Chapter 11 of the Bankruptcy Code in this Court on June 1, 1982. Its Committee of Unsecured Creditors was appointed by the office of the United States Trustee on June 10, 1982. Pursuant to Debtor's Plan of Reorganization, as confirmed by this Court on November 22, 1983, Debtor assigned the right to avoid all pre-petition preferential or fraudulent transfers to its Committee of Unsecured Creditors.

2. That Defendant Habstritt Farms, Inc. (hereinafter "Defendant") is a producer of agricultural seed products with its principal place of business in Roseau County, Minnesota.

3. That, prior to December 23, 1981, Debtor, acting as a broker, received an order from Peterson Seed Company of Savage, Minnesota, for 800 fifty-pound bags of grass seed (hereinafter "the seed").

4. On December 23, 1981, Debtor ordered the seed from Defendant at an agreed rate of $23.50 per bag. Under the terms of the order, Debtor instructed Defendant to ship the seed directly to Peterson Seed Company.

5. That Defendant shipped the seed directly to Peterson Seed Company on or about December 23, 1981.

6. That Debtor's purchase statement dated December 23, 1981, shows that on that date Debtor debited its purchases account for $18,800.00 and credited its accounts payable account for $18,800.00 as a result of the Peterson-Habstritt transaction.

7. That Debtor issued its check number 10985 on February 26, 1982, in the amount of $18,800.00 to Defendant. This check was issued on Debtor's regular business account at National Bank of Commerce, Mankato, Minnesota. This check was issued in full payment of Debtor's obligation to Defendant arising out of the Peterson seed order of December 23, 1981.

8. That Defendant deposited Debtor's check at Defendant's bank on March 3, 1982.

9. That Debtor's check was paid by Debtor's bank on March 5, 1982.

10. That, under the brokering arrangement and the terms of Peterson Seed Company's Order of December 23, 1981, Debtor, Peterson Seed Company, and Defendant created a relationship in which Peterson Seed Company became obligated to Debtor for its purchase price for the seed and Debtor became obligated to Defendant for the sum of $18,800.00.

## CONCLUSIONS OF LAW

Plaintiffs' cause of action against Defendant is premised upon 11 U.S.C. § 547.[1] The language of that statute applicable to this case is as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The party seeking to avoid a preferential transfer under this section must prove the existence of all five of the listed elements, though he may initially rely upon the presumption of insolvency under § 547(f) to establish the third element. 4 COLLIER ON BANKRUPTCY, ¶ 547.52, at 547–178 (1985).

11 U.S.C. § 547(c) creates several exceptions limiting the trustee's power to avoid a transfer which is otherwise preferential under the definition of § 547(b). Those portions of § 547(c) which are relevant to this case are as follows:

(c) The trustee may not avoid under this section a transfer—

. . . . .

(2) to the extent that such a transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms.

Defendant's Answer and Cross-Motion for Summary Judgment raise three defenses to Plaintiffs' cause of action, which may be summarized as follows:

1. Because Debtor was acting solely as a broker and never took ownership in or possession of the seed, it was only acting as a conduit for a transfer of

---

1. Debtor's Petition was filed in this Court prior to October 9, 1984, the effective date of the non-jurisdictional amendments to the Bankruptcy Act enacted by the Bankruptcy Amendments and Federal Judgeship Act of 1984. That Act included changes in the language of § 547 as well as the addition of new provisions to the code which resulted in the renumbering of many sections. All references and citations to the Code in this opinion shall be to the pre-Amendments Act language, which is the law applicable to this adversary proceeding. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 553(a), 98 Stat. 333, 392 (1984).

funds between Peterson Seed and Defendant; therefore, the transfer of funds from Debtor's checking account which took place was not a transfer of Debtor's property.

2. Even if there was a transfer of Debtor's property, the transfer took place upon the delivery of Debtor's check on February 26, 1982, outside the period of ninety days immediately prior to the filing of Debtor's Chapter 11 Petition.

3. That, even if a debt was incurred and there was a transfer of Debtor's property on account of the debt, because the debt was not due until January 22, 1982, the transfer fell within the "45-day ordinary course of business" exception under § 547(c).

Defendant does not dispute the existence of several of the elements of a preferential transfer under § 547(b). At least from argument, there is no dispute that the transfer, if any, was made to or for the benefit of a creditor of Debtor, for or on account of an antecedent debt.[2] Further, Defendant does not dispute that Debtor was insolvent at all relevant times; nor does it dispute that this sequence of events enabled it to receive more than it would have received in a hypothetical distribution to creditors under a Chapter 7 liquidation.

Counsel for both parties submitted well-written and carefully reasoned memoranda of law. The Court concludes, however, that Defendant's positions are not supported by law and that summary judgment must be granted in favor of Plaintiffs.

■ On Defendant's first defense, the Court concludes that the delivery and negotiation of Debtor's check was a transfer of Debtor's property. Debtor did not segregate any funds received by it from Peterson Seed Company in a separate account or, apparently, by any bookkeeping method other than the debiting and crediting of general "purchases" and "accounts payable" accounts. The funds paid to Defendant came from a general account maintained by Debtor in the ordinary course of its business activity, in which it pooled its receipts. There is no evidence of any agreement among the parties that Debtor was to handle the funds involved in any manner other than that which it actually used. All of the evidence compels the conclusion that Debtor, with the consent of all parties, commingled funds it received from Peterson Seed with its own general funds, and became generally liable to Defendant on the transaction. Defendant apparently does not deny that Debtor would have been liable at law to Defendant had Debtor not paid Defendant for the seed as agreed. The fact that Debtor never took ownership of the seed is, indeed, irrelevant.

■ In its second defense, Defendant argues that, even if a transfer of Debtor's property took place, the transfer did not occur within the ninety days immediately prior to the filing of Debtor's Petition as required under § 547(b)(4)(A). The parties do not dispute that Debtor issued its check on February 26, 1982; that Defendant deposited Debtor's check at its bank on March 3, 1982; and that Debtor's bank paid the check on March 5, 1982. The significant question on this defense is a legal one: When did the transfer of Debtor's funds take place? Defendant argues that, as a matter of law, the transfer of Debtor's funds took place upon Debtor's issuance of the check, or at the latest upon Defendant's receipt and physical acceptance of the check. The question of when a transfer of a Debtor's funds takes place for preference purposes is a federal question, which the federal courts are to decide by reference to state law. *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305 (1945); *Olsen-Frankman Livestock Marketing Serv., Inc. v. Citizens National Bank*, 4 B.R. 809, 812–13 (D.Minn.1980). 11 U.S.C. § 101(41) defines "transfer" as:

**2.** This concession seems to logically conflict with the argument that Debtor did not transfer any of its property when it issued and its bank paid its check; if a debtor-creditor relationship in fact existed between Debtor and Defendant, it is difficult conceptually to characterize the issuance and payment of the check as anything but a satisfaction of the debt from its funds.

... every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property ...

The key words in this definition are *"disposing of or parting with property ..."*; the issue then becomes when, under state law, the maker parts with the funds represented by a check. Under Article 3 of the Uniform Commercial Code as enacted in Minnesota,

> A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.

MINN.STAT. § 336.3–409(1). Acceptance by a drawee is defined as follows:

> Acceptance is the drawee's signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery or notification.

MINN.STAT. § 336.3–410(1). Therefore, it is clear that under Article 3 the issuance of a check does not operate as an immediate assignment of funds in an account; the funds remain subject to third-party claims until the draft is accepted by the drawee. *In Re Sportsco, Inc.,* 12 B.R. 34, 36 (Bankr. D.Ariz.1981).

█ The U.S. District Court for this District has concluded on the basis of Article 3 that the transfer of funds represented by a debtor's check takes place upon acceptance and payment by the drawee bank. *Olsen-Frankman Livestock Marketing Serv., Inc. v. Citizens National Bank.* The great majority of Bankruptcy Courts deciding this question in the context of

§ 547(b)(4) have agreed. *In Re Ind. Clearing House Co.,* 41 B.R. 985 (Bankr.D.Utah 1984); *In Re Georgia Steel, Inc.,* 38 B.R. 829 (Bankr.M.D.Ga.1984); *In Re Video East, Inc.,* 33 B.R. 61 (Bankr.E.D.Pa.1983); *In Re Naudain, Inc.,* 32 B.R. 875 (Bankr. E.D.Pa.1983); *In Re Moran Air Cargo, Inc.,* 30 B.R. 406 (Bankr.D.R.I.1983); *In Re Gander Mt., Inc.,* 29 B.R. 266 (Bankr.E.D. Wis.1983); *In Re Mailbag International, Inc.,* 28 B.R. 905 (Bankr.D.Conn.1983); *In Re Skinner Lumber Co.,* 27 B.R. 669 (Bankr.D.S.C.1982); *In Re Advance Glove Mfg. Co.,* 25 B.R. 521 (Bankr.E.D.Mich. 1982); *In Re Supermarket Dist. Corp.,* 25 B.R. 63 (Bankr.D.Mass.1982); *In Re Fabric Buys of Jericho, Inc.,* 22 B.R. 1010 (Bankr. S.D.N.Y.1982); *In Re Sportsco, Inc.,* 12 B.R. 34 (Bankr.D.Ariz.1981); *In Re Duffy,* 3 B.R. 263 (Bankr.S.D.N.Y.1980). *See also, Nicholson v. First Investment Co.,* 705 F.2d 410 (11th Cir.1983) (Act case). *Contra, Shamrock Golf Co. v. Richcraft, Inc.,* 680 F.2d 645 (9th Cir.1982) (Act case, Code dicta); *In Re Walker Indust. Auctioneers, Inc.,* 45 B.R. 452 (Bankr.D.Or.1984).[3] For this Court, to hold otherwise would defeat one of the expressed goals of the framers of the Bankruptcy Code, which was to coordinate the application of the Uniform Commercial Code and other modern commercial statutes with federal bankruptcy law whenever such coordination would not interfere with paramount bankruptcy policy considerations. *See, e.g.,* H.R.REP., No. 595, 95th Cong., 1 Sess. at 5 (1977), U.S.Code Cong. & Admin.News 1978, p. 5966. Thus, the Court concludes that the transfer of Debtor's funds represented by the check took place when National Bank of Commerce paid the check on March 5, 1982. As a result, the transfer took place within the

---

**3.** Some courts have taken yet another approach and have held that, though the acceptance and honor of a check by the payee bank is the "transfer" contemplated by § 547(b)(4), the date of delivery of the check to the debtor is the "transfer" contemplated for the purpose of the exceptions under § 547(c)(1), (c)(2), and (c)(4). *See, e.g., In Re Fasano/Harriss Pie Co.,* 43 B.R. 871 (Bankr.W.D.Mich.1984). This Court need not address this question at this time. Because the Court has concluded *infra* that Debtor's debt

to Defendant was incurred on December 23, 1981, and because both the date of delivery of Debtor's check and the date of honor thereof by Debtor's bank are more than 45 days after the date on which the debt was incurred, the § 547(c)(2) exception is inapplicable. In any event, even had Congress intended the date of delivery to control for the purposes of the § 547(c) exceptions, it plainly does not control for the purposes of § 547(b)(4). *In Re Georgia Steel, Inc.,* at 834.

ninety days immediately preceding the filing of Debtor's Chapter 11 Petition.

Lastly, Defendant argues that, even if the transaction between Debtor and Defendant falls within the definition of a preferential transfer set forth in § 547(b), it nonetheless is excepted from avoidance under the "45-day ordinary course of business" exception. In order for Defendant to avail itself of this exception, it must show that Debtor's debt to it was incurred within the forty-five days immediately preceding the March 5, 1982 transfer of Debtor's funds. Defendant has produced the affidavits of its two principals that "pursuant to the normal course of business and industry standards", Debtor did not become liable for the sale of the seed to Peterson Seed Company until thirty days after the date of Peterson Seed's order. Based on this allegation, Defendant argues that Debtor's debt to Defendant was not "incurred" until January 22, 1982—which was within forty-five days of the payment of its check. Debtor has not produced any evidence to challenge Defendant's statement of the "normal course of business and industry practice", but argues that the date on which payment was due is irrelevant to this action.

■ The Court agrees with Plaintiffs' characterization of this issue. Under the § 547(c)(2) exception, the crucial date for the commencement of the 45-day period is the date "such debt was incurred". The Bankruptcy Code defines "debt" as "liability on a claim". 11 U.S.C. § 101(11). The Code further defines "claim" as a "right to payment, whether or not such right is ... matured, unmatured, disputed, undisputed, legal, [or] equitable ..." 11 U.S.C. § 101(4). A reading of these two definitions in conjunction with § 547(c)(2)(B) compels the Court to conclude that Debtor's debt to Defendant was "incurred" when Defendant shipped the seed to Peterson Seed Company on or about December 23, 1981. *In Re Iowa Prem. Serv. Co.*, 695 F.2d 1109 (8th Cir.1982); *In Re Gold Coast Seed Co.*, 751 F.2d 1118 (9th Cir.1985). Defendant has produced no evidence to dispute the conclusion that, *on that date*, it obtained a right to payment from Debtor as a result of its shipment of the seed. MINN.STAT. §§ 336.2–507(1) and 336.2–504. The possibility that under industry practice Debtor's right to payment did not mature until later is irrelevant. Debtor incurred a debt to Defendant outside the 45-day period under § 547(c)(2) and, therefore, the transfer of Debtor's funds is not excepted from Plaintiffs' avoidance powers.

■ The parties have acknowledged, and the Court has independently concluded, that there is no genuine issue of material fact in this adversary proceeding; therefore, this matter is ripe for summary judgment. FED.R.CIV.P. 56, *made applicable to adversary proceedings by* BANKR.R. 7056. On the basis of the record before it, the Court concludes that Plaintiffs have demonstrated the existence of all six elements of a preferential transfer under the applicable language of 11 U.S.C. § 547 and, therefore, Plaintiffs are entitled to summary judgment.

WHEREFORE, IT IS HEREBY ORDERED:

1. That Defendant's motion for summary judgment is denied;

2. That Plaintiffs' motion for summary judgment is granted and, further, that judgment in the amount of $18,800.00 be entered in favor of Plaintiffs against Defendant.