**BRANIFF AIRWAYS, INC., et al.,**
**Plaintiffs–Appellants,**

v.

**MIDWEST CORPORATION, d/b/a**
**Midwest Communication System,**
**Defendant–Appellee.**

No. 88–1447.

United States Court of Appeals,
Fifth Circuit.

May 25, 1989.

Rehearing Denied June 21, 1989.

A.L. Vickers, Ungerman & Vickers, Dallas, Tex., for plaintiffs-appellants.

Richard A. Capshaw, Haynes & Boone, Dallas, Tex., for defendant-appellee.

Before CLARK, Chief Judge, RUBIN and DAVIS, Circuit Judges.

CLARK, Chief Judge:

Braniff Airways, Inc., debtor in possession, appeals from the judgment in favor of the defendant Midwest Corporation. The dispute involves a check in the amount of $96,859.96 which was issued by Braniff to Midwest less than 90 days before Braniff filed its bankruptcy petition. Braniff seeks to recover the amount of the check as a preferential transfer under 11 U.S.C. § 547(b). The district court held that the transfer was an ordinary business payment excepted from the trustee's avoidance powers by 11 U.S.C. § 547(c)(2). A primary issue at trial was whether payment was made within 45 days of the date the debt was incurred. This determination is controlled by when a transfer occurs if payment is made by check. We affirm the judgment of the district court, finding that the time of delivery of a check is the time of transfer for purposes of § 547(c)(2).

*Facts*

Midwest installed a computer-assisted audio-visual learning system for Braniff. The trial court found that Midwest's work was accepted by Braniff and the debt for it was incurred on January 25, 1982. Payment was not made until March, when Braniff issued a check in the amount of $96,859.96 payable to Midwest. The check, dated March 11, 1982, was picked up at the Braniff offices in Dallas by Merill Wood. Wood could not remember the exact day on which he received it. The check was deposited in Midwest's account in Miami on March 15, 1982. Braniff filed its bankruptcy petition on May 13, 1982. Braniff brought this action on May 14, 1984, seeking to recover the payment to Midwest as a preferential transfer.

I.

Section 547(b) of the Bankruptcy Act provides that a trustee may avoid transfers of property of the debtor made within 90 days of the date on which the petition was filed. The trustee cannot avoid a transfer to the extent that such transfer was

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee;

(D) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

The district court determined that the payment from Braniff to Midwest fit the ordinary business payment exception established by § 547(c)(2). Braniff maintains that the district court erred in concluding that: 1) the payment was made in the ordinary course of business and according to ordinary business terms; 2) payment by check is made when the check is delivered; 3) the check was delivered on March 11, 1982; and 4) Merrill Wood acted as the agent of Midwest Corporation when he picked up the check. We will address each issue below.

1. Payment in the Ordinary Course of Business

■ Whether or not a payment is made in the ordinary course of business and according to ordinary business terms is a factual determination which should not be set aside unless clearly erroneous. Braniff argues that this payment was not in the usual course of business because Midwest created a "dummy invoice" in September 1981, six months before payment was initiated. Testimony at the trial indicated that the invoice was generated to cause Braniff to voice any complaints about the system so that Midwest could cure any defects and then receive payment. The district court found that this action was not unusual, and stated that there was no persuasive evidence that Midwest created the invoice in order to receive more money than it would have under the bankruptcy plan.

Braniff also relies on the fact that Midwest was first offered payment in the form of discounted airline tickets as evidence that the transaction was abnormal. As the court pointed out, however, Midwest was ultimately paid in cash. There is evidence on the record as a whole to support the court's finding that the payment was made in the ordinary course of business.

The district court also found that the payment was made according to ordinary business terms. In reaching that conclusion, the court noted that Braniff properly demanded that the defects be remedied, that Midwest remedied the defects and requested payment, and that Braniff paid Midwest in cash. The finding that the payment occurred according to regular business terms is not clearly erroneous.

2. Time of Transfer

■ The principal question of law raised in this appeal concerns the time a transfer occurs for purposes of § 547(c)(2) when payment is made by check. Section 547(c)(2) requires that the transfer occur within 45 days of the date on which the debt was incurred. In this case, the transfer to Midwest had to occur no later than

March 11, 1982, to fall within the 45–day limit. The district court held that the payment occurred at the time the check was delivered, and further found that such delivery occurred on March 11, 1982, the date of the check.

Braniff urges a strict construction of the definition of transfer contained in subsection 547(e)(1)(B): "a transfer of fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." The prefatory language in subsection (e) states that the definition is "for the purposes of this section." Therefore, Braniff argues, this definition of "transfer" is equally applicable to subsection (c)(2). Thus, a transfer occurs only when the creditor's rights in the debtor's funds are greater than the rights of a judicial lienholder, and that is when the check is actually paid by the drawee bank.

Courts have split in deciding when a check transfer occurs. A number of bankruptcy courts have adopted the position urged by Braniff. *See e.g., In re Propst,* 81 B.R. 406 (Bkrtcy.W.D.Va.1988); *In re Quality Holstein Leasing, Inc.,* 46 B.R. 70 (Bkrtcy.N.D.Tex.1985); *In re Naudain, Inc.,* 32 B.R. 875, 878 (Bkrtcy.E.D.Pa.1983). We are persuaded, however, that the correct analysis is that developed in *O'Neill v. Nestle Libbys P.R. Inc.,* 729 F.2d 35 (1st Cir.1984) and *In re White River Corp.,* 799 F.2d 631 (10th Cir.1986). These circuits hold that transfer occurs upon the delivery of a check. This construction is consistent with the legislative history of the exception, the underlying purpose of § 547, and accepted commercial standards.

The joint explanatory statement, submitted by both houses of Congress, regarding the application of § 547(c)(1) and (2) in the compromise bill, states:

Payment of a debt by means of a check is equivalent to a cash payment, unless the check is dishonored. Payment is considered to be made when the check is delivered for the purpose of sections 547(c)(1) and (2).

124 Cong.Rec. § 17414 (daily ed. Oct. 6, 1978) (statement of Sen. De Concini); 124 Cong.Rec.H. 11097 (daily ed. Sept. 28, 1978) (statement of Rep. Don Edwards). These statements reflect the most recent legislative explanation of § 547(c) as it existed prior to the 1984 amendments, and take into account final compromises reached between the House and Senate.

Further, in discussing subsection 547(c), the Senate report states:

Normally, a check is a credit transaction. However, for purposes of this paragraph, a transfer involving a check is considered to be "intended to be contemporaneous," and if the check is presented for payment in the normal course of affairs ... that will amount to a transfer that is "in fact substantially contemporaneous."

S.Rep. No. 989, 95th Cong., 2d Sess. 88, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5874. The discussion of the second subsection, the one involved in this case, does not state that a check is to be treated as cash. However, the court in *O'Neill* reasoned that this language applies equally to the 45–day rule under subsection (c)(2), "since both exceptions cover transfers made in the normal course of a debtor's business or financial affairs." *O'Neill,* 729 F.2d at 37.

This interpretation also best serves the goal of the business payment exception. The purpose of this exception, as expressed by Congress, is "to leave undisturbed normal financial relations." S.Rep. No. 989, 95th Cong., 2d Sess. 88, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5874. As noted by the *O'Neill* court, treating payment by check as a credit transaction would discourage creditors from continued dealings with troubled businesses "for fear that any payments made by the debtor could later be avoided." Also, in ordinary commercial transactions payment by a check which is subsequently honored is considered to be a cash payment.

Finally, § 547(e)(1)(B), upon which Braniff relies, addresses perfection of security interests in the debtor's property. That section does not govern transactions which

are not intended to transfer a security interest in property. *See In re Arnett*, 731 F.2d 358, 362 (6th Cir.1984); *In re Walker Industrial Auctioneers, Inc.*, 45 B.R. 452, 453–54 (Bkrtcy.D.Ore.1984). In this case Braniff's check was not taken as security but rather as payment in full on the existing debt. Section 547(e)(1)(B) is inapplicable to the case at bar. Braniff's check was presented for payment within the 30–day period deemed reasonable under the Uniform Commercial Code, and was duly paid by the drawee bank. The transfer of funds occurred when the check was delivered.

### 3. Date of Delivery

██ Braniff challenges the district court's factual conclusion that delivery of the check occurred on March 11, 1982, the last day within the 45–day period. The check was dated March 11, 1982, which was a Thursday. Wood testified that he could not recall which day he went to Braniff's Dallas office and picked up the check. He was positive, however, that he mailed the check to Midwest's office in Miami. That office deposited the check in a Miami bank on Monday, March 15, 1982. The district court stated that it was "more reasonable to infer that an envelope mailed on Thursday from Dallas to Miami would reach Miami in time to permit a Monday, March 15, bank deposit, than to infer that the envelope was mailed on Friday." This inference accords with common sense and reason. It certainly is not clearly erroneous on the facts in the record. The district court's finding that the check was delivered on March 11, 1982, within the 45–day period, controls in this case.

### 4. Agency of Wood

██ Central to the finding that the check was delivered on March 11 is the factual conclusion that Wood was acting as Midwest's agent when he obtained the check. Wood had been employed by Midwest from 1971 through 1980, but at the time he received Braniff's check he was employed by Tool Associates. Wood testified that he had picked up checks for Midwest in the past, and that he was acting on Midwest's instructions to pick up the Braniff check on

this occasion. Further, Braniff turned the check over to Wood, and that same check was deposited in Midwest's Miami bank account several days later.

Braniff maintains that Midwest failed to sustain its burden of proving the agency relationship. Under Texas law, agency may not be proven by declarations of the alleged agent alone. *See Claus v. Gyorkey*, 674 F.2d 427, 434 n. 7 (5th Cir.1982). This rule grew out of the typical situation where a third party attempts to bind a principal through the acts of his agent. In this case, however, Midwest seeks only to demonstrate the authority of its own agent.

An agent's statements may corroborate other evidence of the agency relationship, such as the parties' conduct concerning the transaction. *See Cherokee Water Co. v. Forderhause*, 727 S.W.2d 605 (Tex.Ct.App. 1987). In this case, the undisputed evidence is that Braniff's check was delivered to Wood. Clearly, Wood was not acting in his own behalf in picking up the check which was deposited to the account of Midwest forthwith. Wood's statement that he was authorized to receive the check for Midwest coordinates with the other proof to support the district court's finding. Based on all the evidence, the district court's conclusion that Wood received the check on behalf of Midwest is not clearly erroneous.

### II.

In sum, the date of delivery of a check is the date on which the transfer occurs for the purposes of § 547(c)(2). The check at issue here was delivered within 45 days of the date the debt was incurred, and was presented and paid according to reasonable commercial standards. Braniff cannot avoid the transfer and recover the amount of the check from Midwest. The judgment of the district court is

AFFIRMED.